## ALLNUTT *v.* WOOD.

Opinion delivered March 5, 1928.

1. WILLS—ESTABLISHMENT OF LOST WILL—SUFFICIENCY OF EVIDENCE.
   —Under Crawford & Moses' Dig., § 10542, where the effect of testimony of a witness testifying to the execution of the lost will is to give him the entire subject-matter of litigation relative thereto, a will cannot be established by his testimony.

2. WILLS—SUFFICIENCY OF EVIDENCE TO PROVE LOST WILL.—In a suit under Crawford & Moses' Dig., § 10542, to establish a lost will and for an accounting, evidence *held* insufficient to prove the contents of such will, as required by § 10545.

3. WILLS—SUIT TO ESTABLISH—LACHES.—Plaintiff, suing to establish a lost will, and failing to bring an action until after the death of the life tenant 14 years later and after the death of one of the subscribing witnesses, *held* barred by laches.

Appeal from Conway Chancery Court; *W. E. Atkinson*, Chancellor; reversd.

*Edward Gordon,* for appellant.

*Strait & Strait,* for appellee.

SMITH, J. Appellee brought this suit to establish the alleged lost will of Dr. S. H. Cowden and for an accounting of the estate of Nancy E. Cowden, the widow of Dr. Cowden. The complaint alleged that Dr. Cowden died testate, and that by his last will he devised all his property, both real and personal, to his widow for life, with remainder to Charles A. Wood. Dr. Cowden died September 19, 1911, and was survived by his widow, who died December 25, 1925. Dr. Cowden left no lineal descendants, and, so far as is known, no collateral heirs.

The answer filed by the heirs of Mrs. Cowden denied that Dr. Cowden died testate, and further alleged the fact to be that, shortly before his death, he executed a deed to all his property to his wife, in which he conveyed to her in fee-simple all his real estate, and his personal property also. In the reply to this answer it was alleged that the purported deed from Dr. Cowden to his wife was a forgery.

The chancellor found the fact to be that Dr. Cowden executed a will in due form, whereby he devised all his

property to his wife for her life, with the remainder to Charles A. Wood, except that he devised to Ed Francis, subject to his wife's life estate, a certain triangular lot constituting a part of the testator's homestead. The estate of the testator consisted of a valuable lot in the city of Morrilton, containing about two and three-fourths acres, and a time certificate of deposit in the Bank of Morrilton for something over $2,700.

No children were born to the union of Dr. and Mrs. Cowden, but they took two small boys into their family and reared them. One of these was plaintiff, Charles A. Wood, who was Mrs. Cowden's nephew; the other was Ed Francis. These boys lived with Dr. and Mrs. Cowden as members of the family until they were grown and had married, when they established homes for themselves. The testimony shows that Dr. and Mrs. Cowden regarded these young men with the tenderest affection.

The testimony shows very clearly that Dr. Cowden executed a will, about two months before his death, but the will could never be found after his death. It is the theory of the plaintiff that Robert L. Williams, a brother of Mrs. Cowden, not only destroyed the will by burning it, but that he also forged the deed, and the finding of the chancellor accords with this theory.

Without reviewing the testimony, which we have carefully considered, we announce our conclusion to be that the testimony supports the finding that the will was destroyed and the deed was forged, but, notwithstanding the fact that we concur with the chancellor in these findings, we do not affirm the decree establishing the will as a lost instrument, because we do not think its provisions were established with the certainty which the law requires to restore a lost will, and also because we think plaintiff was barred by laches in instituting this suit.

The attorney who prepared the will testified that the will gave to Mrs. Cowden all the property for life, with remainder to Charles A. Wood, except a lot forming a part of Dr. Cowden's estate was devised to Ed Francis after the termination of Mrs. Cowden's life estate. This

witness testified that the testator gave certain directions about the wife of Charles A. Wood, but he did not remember whether the will as executed gave Mrs. Wood anything or not.

The attesting witnesses to the will were Dr. Charles D. Clark, who died in the lifetime of Mrs. Cowden, and Dr. Martin A. Metzger. The latter, when called as a witness, testified that the entire remainder was given to Charles A. Wood. Neither the attorney who drew the will nor Dr. Metzger remembered whether an executor had been named in the will or not.

Plaintiff Wood, testifying in his own behalf, stated that he was present when the will was executed, and that he heard it read, and he remembered its provisions to be as testified to by the attorney.

Dr. and Mrs. Cowden were frugal, and each kept a savings account, the accounts being kept in different banks. After the alleged forged deed had been placed of record, Mrs. Cowden's brother exhibited it to the cashier of the bank where Dr. Cowden's account was kept, and the account was transferred to Mrs. Cowden's name. Thereafter renewal certificates were issued annually by that bank in the name of Mrs. Cowden, who never used any of that account except the interest, and not all the interest, as the deposit was slightly more at the time of Mrs. Cowden's death than it was when her husband died.

It is strongly urged by counsel for plaintiff that the fact that Mrs. Cowden used only the interest on this deposit, when she was authorized by the will to consume the principal, if her necessities had required her to do so, shows that she recognized the fact that her husband had left a will. It appears also that, after the death of Dr. Cowden, his widow executed a deed to Ed Francis for the portion of the real estate which plaintiff testified was the part given Francis by the will, subject to the widow's life estate, and appellee insists that this was done because Mrs. Cowden knew that action accorded with the wishes of her husband as expressed in his will.

The statute provides for the restoration of lost or destroyed wills, and vests that jurisdiction in chancery courts. Section 10542, C. & M. Digest.

Section 10545, C. & M. Digest, reads as follows:

"No will of any testator shall be allowed to be proved as a lost or destroyed will unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the lifetime of the testator; nor unless its provisions be clearly and distinctly proved by at least two witnesses, a correct copy or draft being deemed equivalent to one witness."

Section 10529, C. & M. Digest, which is relevant to the facts of this case, reads as follows:

"If any person shall be a subscribing witness to the execution of any will wherein any beneficial devise, legacy, interest or appointment of real or personal estate shall be made to such witness, and such will cannot be proved without the testimony of such witness, such devise, legacy, interest or appointment shall be void so far only as concerns such witness, or any person claiming under him, and such person shall be a competent witness, and may be compelled to testify respecting the execution of such will, in like manner as if no devise or bequest had been made to him."

It is true that appellee was not one of the subscribing witnesses to the will, but, in the effort to prove its loss and to restore it, he becomes such in effect, for the purpose and effect of his testimony was to prove its execution, and, according to his testimony, the will which he seeks to restore gives him all the testator's property, the life tenant being dead, except the lot conveyed by her to Francis. As appellee, in testifying to the execution of the will, becomes in effect a subscribing witness to its execution, and as the effect of his testimony is to give him the entire subject-matter of the present litigation, the will cannot be established by a consideration of his testimony.

As no copy or draft of the will was produced, the testimony of two witnesses as to its execution and con-

tents is essential. It is insisted that the testimony of the attorney and that of Dr. Metzger supplies this requirement.

The testimony of the last-named two witnesses proves the execution of the will, but there is a substantial conflict in their testimony as to its contents. According to the recollection of the attorney, there was possibly a devise to appellee's wife. The witness stated: "As I now recall, Dr. S. H. Cowden mentioned Mrs. Charles Wood, wife of Charles A. Wood, but as to whether or not any of the property was willed to her in said will, I cannot now state positively." This witness was very definite in his statement that the remainder interest in a portion of the real estate had been given Ed Francis, the description of which the witness did not recall. According to Dr. Metzger, the surviving subscribing witness, the entire estate was given to Wood, subject to the life estate of the testator's widow.

In the case of *Rose* v. *Hunnicutt,* 166 Ark. 134, 265 S. W. 651, it was held (to quote a syllabus) that "it will be presumed that a testator destroyed a will which cannot be found after her death, with intention to revoke it, if she retained custody of it or had access to it, but this presumption may be overcome by proof."

In the case of *Rawlings* v. *Berry,* 128 Ark. 273, 194 S. W. 249, the court discussed the *quantum* of proof necessary to overcome the presumption that a lost will had been revoked, and it was there said:

"We think no error was committed in defining the *quantum* of proof necessary to establish and prove a lost will. In the case of *Nunn* v. *Lynch,* 73 Ark. 20, 83 S. W. 316, Chief Justice HILL, speaking for the court, quoted with approval from the case of *Rhodes* v. *Vinson,* 9 Gill (Md.) 169, 52 Am. Dec. 685, the following statement of the law: 'The policy of the law has thrown around last wills and testaments as many, if not more, shields to protect them from frauds, impositions and undue influence than any mode of conveyance known to the law. Can there be a doubt that, in cases like the present, where

the object is to establish the contents of a paper which has been destroyed as and for a last will, that policy does require the contents of such paper to be established by the clearest, the most conclusive, and satisfactory proof? We think not.' See also Underhill on the Law of Wills, vol. 1, § 275, and 14 Ency. of Ev., p. 465.''

Appellee cites and relies upon the case of *Bradway* v. *Thompson,* 139 Ark. 542, 214 S. W. 27, as sustaining the decree of the court below in establishing the alleged lost will. But the facts in that case were stronger in support of the will than they are in the instant case. There a carbon copy of the will was produced, which the statute makes equivalent to one witness. There was no question about the provisions of the will. More than two witnesses proved its execution, and it was clearly shown to have been in the possession of the testator when he left his home for the hospital, from which he never returned, and it was also shown that a person had access to the will who would have profited by its destruction.

The instant case is more nearly like that of *Dudgeon* v. *Dudgeon,* 119 Ark. 128, 177 S. W. 402, in which case, as in this, the execution of the will was clearly shown, but its provisions were not. It was there said:

''While it is admitted there was a will, appellant failed to prove its provisions. Section 8062 of Kirby's Digest gives chancery courts jurisdiction to establish lost or destroyed wills, but it is not sufficient simply to establish the fact that there was a will. It is just as essential that the proof show its provisions. Section 8065 of Kirby's Digest provides that no will shall be allowed to be proved as a lost or destroyed will unless, among other requirements, its provisions be clearly and distinctly proved by at least one witness, a correct copy or draft being equivalent to one witness.''

We are also of the opinion that plaintiff is barred by laches from prosecuting this suit.

In the case of *Dudgeon* v. *Dudgeon, supra,* it was said:

"The right to probate this will would not be defeated merely by the delay in the institution of this suit, although, with full knowledge of all the facts, appellant delayed over ten years in moving for that purpose. Yet this is a circumstance to be considered in determining what action the court should take."

Here, however, we have something more than mere delay. Dr. Cowden died in 1911, and his wife in 1925, and no effort was made to probate this will until after her death. It cannot be assumed that she was not interested in the devolution of the estate, whatever it was, which she acquired upon the death of her husband. Dr. Clark, one of the attesting witnesses, was also dead when the suit was filed. It is true that the attorney who prepared the will and one of the attesting witnesses still survived, but such time has elapsed since the death of the testator that one or the other of these last-named persons has become confused about the provisions of the will. During all this time there was of record a deed which apparently conveyed to Mrs. Cowden the entire estate. Appellee insists that the testimony shows that Mrs. Cowden did not claim under this deed, and that he was ignorant of its existence until after Mrs. Cowden's death. Had this suit been brought seasonably, it might otherwise appear.

Appellee insists that he could not have disturbed Mrs. Cowden's possession and use of the land or the money, for the reason that the will gave her the right thereto during her life; and this is true if there was such a will as he seeks to prove, but, even so, he could have probated the will during Mrs. Cowden's lifetime. He was certainly not required to wait until after her death to do so, but this he did, and his delay has thus caused the loss of very material testimony.

In the case of *Reese* v. *Bruce,* 136 Ark. 378, 206 S. W. 658, certain heirs questioned the apparent title of which their ancestor was seized at the time of his death, and, in denying them relief upon the ground of laches, the court said:

"It appears on the face of the bill that W. W. Tate died on the 29th day of May, 1899. If appellants had instituted this suit in his lifetime, he could have explained the character of his title and possession thereunder. Appellants have waited until conditions have changed and until appellees have been deprived of the evidence of their father. This court said, in the case of *Tatum* v. *Arkansas Lumber Co.,* 103 Ark. 251, 146 S. W. 135, that the true doctrine concerning laches was announced by Mr. Pomeroy, as follows: 'Laches, in legal significance, is not mere delay, but delay that works disadvantage to another. So long as the parties are in the same condition, it matters little whether he presses a right promptly or slowly within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. This disadvantage may come from the loss of evidence, change of title, intervention of equities, and other causes, but, when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.' 5 Pomeroy, Eq. Jur. (3 ed.), § 21.''

For the reasons therefore that appellee has failed to prove the provisions of the will with the certainty required by law to restore it as a lost instrument, and because of his laches in instituting this suit, the decree of the court below must be reversed, and, as appellee has no interest in the Cowden estate in the absence of a will, the suit will be dismissed. It is so ordered.