HANNA v. MAGEE.

4-3364, 4-3469

Opinion delivered May 28, 1934.

*J. D. Cook, Sr., J. D. Cook, Jr.,* and *B. E. Carter,* for appellants.

*Shaver, Shaver & Williams,* for appellees.

MEHAFFY, J. J. O. Magee died on July 17, 1932. The record shows that in 1918 J. O. Magee made a will, which was left with the bank in Texarkana, Arkansas.

On January 23, 1924, J. O. Magee made another will. This will made in 1924 was written by Judge Pratt P. Bacon, who was at that time practicing law in Texarkana, Arkansas. At Judge Bacon's suggestion, Mr. Magee gave him $1 to pay to the clerk and the will was deposited with the county clerk of Miller County.

After the death of J. O. Magee, this will was probated and F. F. Magee, the executor named in the will, took charge of all the property of the deceased. F. F. Magee was a brother of J. O. Magee. On November 18, 1932, F. F. Magee died, and his widow, Mallie Magee, was appointed administratrix of the estate of J. O. Magee.

The will made in 1924 was identical with the will made in 1918, except the will in 1918 did not mention the brothers and sisters of J. O. Magee, and the will of 1924 gave them $1 each. All of the estate of J. O. Magee, except $1 each to his brothers and sisters, was bequeathed to F. F. Magee. In the will of 1918, all the property was bequeathed to F. F. Magee.

After the death of F. F. Magee, on April 21, 1933, the appellants filed suit in the Miller Chancery Court, alleging that prior to the death of J. O. Magee, on or about the last day of March or the first day of April, 1932, he executed his last and final will and testament, and by its terms revoked all former wills; and that said will, alleged to have been executed by J. O. Magee, had been lost, destroyed or suppressed, and that a former revoked will had been probated. It was alleged that F. F. Magee, a brother of J. O. Magee, was named as practically the sole beneficiary in the will alleged to have been revoked; that he had caused the same to be pro-

bated, and letters testamentary issued to himself, by virtue of which he took possession of all the property of J. O. Magee, deceased; that either Fleet F. Magee, who had since died, suppressed, lost or destroyed said will during his lifetime, or the same at his death fell into the hands of his successor in administration, Mallie Magee, or into her hands as administratrix of the estate of F. F. Magee, and said administratrix had suppressed, lost or destroyed said will; that said last will was written entirely in the handwriting of J. O. Magee, and was declared by him to be his last will and testament, and the written terms thereof revoked any and all former, wills made by him.

The complaint then set out the provisions of said lost, suppressed or destroyed will. It further alleged that Mallie Magee was appointed administratrix of the estate of J. O. Magee, and also administratrix of the estate of Fleet F. Magee; that Mallie Magee as administratrix has made no report of the property that came into her hands, and that she was at that time asking for an order of distribution. It was also alleged that the estate was of the value of $120,000.

The complaint prayed that they be permitted to prove the existence and possession of said will and contents of same, and the legal execution; that said lost will be restored and caused to be probated, and that the will already probated be canceled and set aside. The appellees filed answer denying all the material allegations in the complaint. The appellants prosecuted an appeal from the probate court to the Miller Circuit Court, and there filed the complaint, which was substantially the same as the complaint in the chancery court.

On May 16, 1933, the chancery court heard the case in the suit to restore the lost will, and dismissed the complaint for want of equity. On November 29, 1933, the case was tried in the circuit court, and judgment entered admitting the will executed in 1924 to probate as the last will and testament of J. O. Magee, and approving and confirming the judgment of the probate court admitting said will to probate. The chancery case is here

as No. 3364 and the appeal from the circuit court is here as No. 3469. The two cases are consolidated and briefed together.

It is admitted that the will probated, the one executed in 1924, was duly made and published, but appellants contend that it was revoked by a later will, which is alleged to have been lost, destroyed or suppressed.

Mrs. Will Green testified that she had known Mr. J. O. Magee the last six years of his life; that she and her husband lived about one-half mile from Magee's house; that Magee talked to her about making a will several times before he made it; that there were some he felt he should leave things to; that she and her husband witnessed the will made some time the last of March or first of April; that Jake Davis, a negro boy, came to their house and took them over to Mr. Magee's, and he said he wanted them to witness a will for him; he had not prepared the will at the time; he prepared it in the presence of witness and her husband; they went to his house about ten o'clock, and he sat down and got some paper and said he had a general form to go by; he said that the donations and gifts he was going to make he had on a slip of paper; said he had made two former wills, but this one revoked all other wills; the will said J. O. Magee declared it to be his last will and testament, and something about sane and disposing mind; said he revoked all former wills; this was in the will; that he wanted Paralee Brown to have $500 and 60 acres of land; gave a description of the land, but witness does not remember it; he gave I. D. Miller $500 and Jake Davis $250 and any car he would have at his death; and Mrs. Bettie Dodson at Garland $5,000 and a brick store building; witness does not know the description of the property, but testified that he gave it to Bettie Dodson before the will was made; that he gave to Fleet Magee $1, and a $5,000 life insurance policy and forgave Fleet Magee all his debts; he said he wanted the balance of his property to be divided among his brothers and sisters; said he wanted it distributed according to the laws of inheritance; that Magee signed the will and read it to

witness and Mr. Green; there was a little paragraph after he signed it, and witness and her husband signed it at his request and in his presence and in the presence of each other; witness read it before she signed it; his mental condition was normal; the will was dated at the top; she saw the will again on Sunday before Magee went to Texarkana sick, and read the will at that time; Magee took the will out of a wallet where he kept it in the right-hand drawer of a dresser locked; he kept money and other papers there; some insurance and receipts and some notes; he wrote the will with an indelible pencil; made his will in March or April, 1932, using large sheets of heavy writing paper; it took one and one-half sheets; this was the first will witness ever saw; no one was present except Magee, witness and her husband; she does not think her husband read the will over; she said Magee told them he had made two other wills; she remembers that because she asked him; his mental condition was all right; she testified that the occasion of Magee's showing her the will was, she asked him about some notes he had of theirs; she asked Magee to let her see their notes, and he did, and it was then she saw the will again and read it.

Will Green, husband of Mrs. Will Green, testified to substantially the same facts as Mrs. Green about the writing and the bequests and the signing of the will. He never saw the will again; he testified that he read the will and just signed on one page, the last one; this was the only will witness ever saw or had anything to do with.

Several witnesses testified that J. O. Magee, during his lifetime, told them he had made a will.

Numbers of witnesses testified for the appellees that Magee had talked to them during his lifetime and told them that he intended for his brother, Fleet Magee, to have all of his property.

Judge Pratt Bacon testified that he had known J. O. Magee and Fleet Magee all their lives, and had represented them both for probably 25 years. He prepared the will made in 1924. There was a prior will made in 1918. He testified that the will made in 1924 was the

last will made by J. O. Magee. Witness testified that the last time he saw Mr. Magee he was very sick, and that his right arm was paralyzed; he was there in February, 1932, and ate dinner there, and Magee could not use his right arm to cut his food; he fed himself with his left hand; the relation between J. O. Magee and his brother, Fleet, was the very best; it was always stated by him in all their conversations that at his death he wanted Fleet to have all his property; he testified that the Greens owed J. O. Magee $3,000 and it was evidenced by three notes; that he drew the notes and mortgage and kept them; turned them over to Fleet Magee after J. O. Magee died. Since the death of Fleet Magee, a payment has been made on the Green notes, and new notes have been made, and witness has possession of them; he prepared the papers; they never were down in the wallet of Jake Magee; were always in witness' possession until J. O. Magee died; one note was past due, and J. O. Magee had been talking about foreclosing when he became sick; that Mrs. Green, on February 17th, paid $250 cash and signed new notes; witness returned to Mrs. Green the $3,000 notes and mortgage; witness went down to the farm with Mrs. Magee after Fleet Magee died to get an inventory of the property; Paralee Brown had been Magee's cook for some time; witness asked her if she ever heard Mr. Magee say anything about the disposition of his property; she said Mr. Magee always said Fleet was to get it; she did not say anything about $500 and 60 acres of land; and when Will Green executed the notes, he did not say anything about having seen the draft of another will.

The undisputed evidence shows that J. O. Magee had a stroke of paralysis about December, 1931, and he died July 17, 1932. There is some conflict in the testimony as to his ability to write after the first stroke of paralysis. He could sign his name, but after the stroke he did not write checks nor other instruments, but, when necessary, he would sign his name. This condition continued up until May or June, at which time he arranged with the bank for Mrs. Mallie Magee to sign all his checks, because his handwriting became so bad that the bank would not pay checks signed by him.

Section 10,545 of Crawford & Moses' Digest reads as follows: "No will of any testator shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the lifetime of the testator; nor unless its provisions be clearly and distinctly proved by at least two witnesses, a correct copy or draft being equivalent to one witness."

The Greens, husband and wife, testified that about the last of March or the first of April, 1932, J. O. Magee wrote with an indelible pencil his will, and that he signed it, and they signed it as witnesses. They then undertake to give the provisions of the will. Each of them testifies that this was the first will they ever saw; they have no knowledge about such instruments at all.

While there is some conflict in the eivdence as to J. O. Magee's ability to use his hand, we think the evidence as a whole clearly shows that he could not have written the will with all the provisions testified to by the Greens in the manner in which it is alleged to have been written. The preponderance of the evidence shows that Magee kept his valuable papers in a bank at Texarkana, and the Greens testify that he wrote this will, signed it and they signed it, and that he put it in a wallet and put it in a dresser drawer. The key to this drawer, as shown by the undisputed evidence, was kept by Magee's negro cook. After it is alleged that this will was written, nothing was said about it by either of the Greens, except one witness testified that the Greens told him immediately after it was done. Magee died, and the will that was in the custody of the county clerk was probated, Fleet Magee made executor, and no claim was made that a will had been made and lost until November 18, 1932. The suit was filed in chancery court April 12, 1933, more than a year after it is claimed the will was made.

There is a total lack of evidence that either Fleet or Mallie Magee destroyed the will. When all the circumstances are considered, we think the proof fails to establish that the will claimed to be lost was ever made.

"The policy of the law has thrown around last wills and testaments as many, if not more, shields to protect them from frauds, impositions and undue influence than any mode of conveyance known to the law. Can there be a doubt that, in cases like the present, where the object is to establish the contents of a paper which has been destroyed, as and for a last will, that policy does require the contents of such paper to be established by the clearest, the most conclusive, and satisfactory proof? We think not." *Allnutt* v. *Wood,* 176 Ark. 537, 3 S. W. (2d) 298.

"The burden of proof to establish the execution and contents of the lost will is upon the party who claims under it. The petitioner is usually required to prove the execution and the contents of the lost will by evidence which shall be strong, cogent and convincing. It is sometimes said that the evidence must be clear, full and satisfactory, though he is never required to produce evidence sufficient to remove all reasonable doubt from the mind of the court." 1 Underhill on Law of Evidence, § 275.

"To support a recovery upon or under a lost instrument, the evidence must be clear and satisfactory that the instrument once existed, but has been lost, and, though diligent search for it has been made, cannot be found, and as to its contents it must be proved in all its substantial parts." 8 Enc. of Ev., 359.

"On no subject, perhaps, are statutes so strict in requiring a writing executed and attested in certain forms as in the case of wills, and, while it is firmly established that a lost will may be proved by secondary evidence, the courts have always required such evidence to be direct, clear, and convincing." *Clark* v. *Turner,* 38 L. R. A. 433; 14 Enc. of Evidence, 465.

We think the circumstances introduced in evidence are sufficient to overcome the evidence of the Greens as to the execution of the will. The persons testifying to the execution of the will, as we have already said, had never seen a will before, knew nothing about instruments of that kind, and were called to testify about a year afterwards. We think the circumstances also show that

Magee could not have written the will in the manner in which it is alleged to have been written.

"The settled rule, which has been many times approved by this court, is that a well connected train of circumstances is as cogent of the existence of a fact as an array of direct evidence, and frequently outweighs opposing direct testimony, and that any issue of fact in controversy can be established by circumstantial evidence when the circumstances adduced are such that reasonable minds might draw different conclusions." *Pekin Wood Products Co.* v. *Mason,* 185 Ark. 167, 46 S. W. (2d) 798; 23 C. J. 48.

There are other circumstances tending to disprove the execution of the will. All of the evidence shows the good feeling between the brothers, J. O. and Fleet Magee, and the evidence also shows that when J. O. Magee would come to Texarkana, he always stayed at Fleet Magee's house; that after it is alleged this will was executed he authorized the bank to accept checks signed by Mrs. Magee. He told many people that all of his property would go to his brother, Fleet Magee. He had made two wills, one in 1918 and one in 1924, and in each of them Fleet Magee was the beneficiary. We think therefore, when all the evidence is considered, that appellants have not established the execution of the will by that kind of evidence required under the law. Having reached the conclusion that the evidence fails to show the execution of the will that is alleged to have been lost, it becomes unnecessary to decide the other questions discussed by counsel.

The judgment of the circuit and decree of the chancery courts are affirmed.