REED v. JOHNSON.

4-6008                                            143 S. W. 2d 32

Opinion delivered June 24, 1940.

*George M. Booth, H. L. Ponder* and *H. L. Ponder, Jr.,* for appellant.

*R. C. Waldron, George H. Steimel* and *W. J. Schoonover,* for appellee.

HUMPHREYS, J. The purported last will and testament of John F. Reed, deceased, was filed by the appellants for probate in the office of the probate clerk of Randolph county, Arkansas, on the 27th day of November, 1939, and while pending in the probate court, appellees filed a petition in said court alleging that said purported will, executed on April 11, 1930, pending for probate, was not the last will and testament of John F. Reed, deceased, for the reason that in the year 1936, John F. Reed executed a last will and testament revoking and annulling the will filed and offered for probate.

The cause was submitted to the court on March 5, 1940, upon the pleadings and the testimony introduced responsive to the issue joined, resulting in a finding and

judgment that the written instrument dated April 11, 1930, purporting to be the last will and testament of John F. Reed, deceased, and offered for probate, was not the last will and testament of said John F. Reed, whereupon, same was revoked, canceled and annulled and the probate thereof denied, from which finding and judgment an appeal has been duly prosecuted by the contestees—appellants, herein.

Without objection the original will and testament of John F. Reed, executed on April 11, 1930, and the affidavits of the attesting witnesses thereto were introduced by the contestees. The will and testament offered for probate mentions all of the testator's children and makes specific bequests for each of them. It was signed by the testator and attested as provided by the laws of the state.

Hubert Nix and Harvey Farrow testified, in substance, that in 1936, they were requested by John F. Reed to witness what he said was his will or last will; that they saw him sign it, and that at his request they signed it as witnesses, and that after doing so John F. Reed made the remark, "This is my will. Don't say anything about it." Both said that they did not read it and knew nothing about its contents, and that they signed it in a barber shop in the town of Biggers in said county. Hubert Nix said that the instrument was typewritten and consisted of two or three pages. Harvey Farrow said that about one year later John F. Reed visited him in Missouri at Poplar Bluff and told him he had the will in his pocket and said that he intended to have a good time the rest of his days and let his children divide what he had after he was gone.

George Reed testified, in substance, after stating that he was a son of John F. Reed, that he was living in 1938 with his father and that while his father was running through his papers hunting for some deeds he saw the will executed by his father in 1936; that he picked it up and asked what it was and his father said that it was his will, put it in his pocket and said he was going to

burn it. Witness was asked by the court whether there was a clause in the will annulling other wills. The witness asked, "What do you mean by clause?" and the court said, "Any writing in there that stated it revoked any and all former wills." The witness answered, "Yes, sir, it did." The witness also said a change was made in said will as to three lots; that his father owned three lots more in 1936 than he did in 1930; that the will was typewritten and was signed by Mr. Nix and Mr. Farrow as witnesses.

Mrs. George Reed testified, in substance, as follows: that she is the wife of George Reed and she knew the deceased, John F. Reed, and that she lived in his home for several years; that she saw the last will and testament of Mr. Reed during that time, along about August, 1938; that her husband and John F. Reed were present when she saw the will and that she read the will; that the will said that he revoked all other wills and his property was to be equally divided; that he put the will back in his pocket and said he was going to burn it and that she never saw it after that time. The following questions and answers appear in her testimony:

"Q. How many pages were there to this will? A. I believe there were four. Q. Was it written with a pencil? A. No, pen and ink. Q. The whole thing was written, the whole will? A. Some was typed. Q. What part was typed? A. Mostly at the heirs and at the head it was kindly pen and ink. Q. Balance was written with pen and ink? A. Best I remember it was. Q. The only part that was typed was where the heirs were put into the will as you remember it? A. Yes, sir. Q. Mr. Reed signed with pen and ink? A. I do not remember."

She further testified that she did not remember how Mr. Nix and Farrow signed it; that in order to hold these four pages together there was a blue sheet cover on it.

Mrs. Beulah Templeton testified, in substance, that in the year 1938 she lived on John F. Reed's place and visited in his home in the evenings; that Mr. Reed showed her his last will and testament that was dated 1936; that

she barely looked it over and just happened to notice there were three lots deeded to Mrs. Anderson; that she did not remember who the witnesses were and never paid any attention to that; that Mr. Reed mentioned it as his last will. On cross-examination she further testified that she was picking cotton on Reed's place and that the will consisted of three pages that were hanging loose, but were clamped at the top; that no cover of any kind was on it; that the will she saw was written in pen and ink.

Sarah Johnson testified that she lived in Reyno and she was a daughter of John F. Reed; that shortly before his death he told her that everything was fixed so that each child would have an equal share.

Effie Anderson testified, in substance, that she was a daughter of John F. Reed and that she was with him just before he died; that he said everything was fixed up so that the children would get an equal share in his property.

Jo Johnson testified, in substance, that he had a talk with John F. Reed in 1935, and was asked by Mr. Reed to write up a will for him; that he advised him to go to W. A. Jackson or Mr. E. G. Schoonover, attorneys, and have them do it for him; that Mr. Reed said he was going to do that.

The question arising on this appeal is whether the court erred in finding that a subsequent will had been executed which revoked the will offered for probate. In order to establish a lost or destroyed will in a court of equity in this state we have a statute requiring that its provisions must be clearly and distinctly proved by at least two witnesses. The statute referred to is § 14563 of Pope's Digest, which is as follows:

"No will of any testator shall be allowed to be proved as a lost or destroyed will unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the lifetime of the testator; nor unless

its provisions be clearly and distinctly proved by at least two witnesses, a correct copy or draft being deemed equivalent to one witness.''

This court said in the case of *Nunn* v. *Lynch,* 73 Ark. 20, 83 S. W. 316, that: ''The policy of the law has thrown around last wills and testaments as many, if not more, shields to protect them from frauds, impositions and undue influence than any mode of conveyance known to the law. Can there be any doubt that in cases like the present, where the object is to establish the contents of a paper which has been destroyed, as for a last will, that policy does require the contents of such paper to be established by the clearest, the most conclusive and satisfactory proof? We think not. And applying this salutory standard to the evidence here, it falls short of convincing, especially as no two of the witnesses give substantially the same evidence as to vital questions.''

It was also said by this court in the case of *Rawlings* v. *Berry,* 128 Ark. 273, 194 S. W. 249, that: ''The will must be established by clear, positive, and satisfactory testimony.''

This court also said in the case of *Allnutt* v. *Wood,* 176 Ark. 537, 3 S. W. 2d 298, that: ''While it is admitted there was a will appellant failed to prove its provisions. Section 8062 of Kirby's Digest (§ 14563 of Pope's Digest) gives chancery courts jurisdiction to establish lost or destroyed wills, but it is not sufficient simply to establish the fact that there was a will. It is just as essential that the proof show its provisions.''

The contestants, the appellees herein, contend that they are not attempting to establish a lost or destroyed will for the purpose of taking property under the provisions thereof, but instead that all the heirs might inherit under the statutory laws of descent and distribution in the state, their purpose being to strike down the first will or will of April 11, 1930, and that the same rule of evidence would not apply as would apply if they were seeking to establish a lost will. In other words, they say that all they must show is that a subsequent

will was executed which contained a clause annulling former wills. We can see no reason why the same quantum of proof would not be required to annul a prior will by the execution of a subsequent will that would be required to establish a lost will. Appellees seem to think that the rule of evidence is changed or modified by § 14519 of Pope's Digest. We do not find anything in that section relieving appellees from proving the contents of the subsequent will by clear, positive and satisfactory testimony in order to annul or revoke a former will. The type of proof necessary to establish a subsequent will which will have the effect of revoking a prior will is discussed in an annotation in 94 A. L. R., p. 1024, from which we copy the following statement:

"The objection to giving a revocatory clause in a lost will the effect of revoking a former will seems to be that such a result would permit a valid existing will to be revoked upon the mere proof that a later will was duly executed and contained a revocatory clause without the necessity of proving any of the dispositive contents of the later will or any of the facts showing why or in what manner the testator changed his will. It is said that an otherwise valid will ought not to be overthrown by such fragmentary and easily manufactured evidence."

We do not think the proof introduced by the contestees, the substance of which is set forth in this opinion, meets the requirements of the rule of evidence required to annul or revoke a former will by a subsequent will. No witness testifies or attempts to testify to the entire contents of the purported, 1936, will of John F. Reed. One or two of them testify that it contained a revocation clause and one or two of them testify that it contains a disposition of subsequently acquired lots of property to the execution of the 1930 will, and one of them says that it made disposition of his property equally to all his heirs. There are discrepancies in their testimony as to whether it contained more than two pages and whether it was in writing or in type. The will offered for probate was regular in form and met all the

requirements of the statute including the attestation of witnesses, and we do not think that such a will should be overthrown by fragmentary, uncertain or inconclusive testimony of the character and kind introduced by appellees who are the contestants herein. The burden was clearly upon the contestants or appellees herein to introduce testimony which clearly, positively and satisfactorily established the contents of the will, and it was not sufficient to show that a subsequent will had been executed in 1936 containing a revocation clause of former wills. They should have gone further and introduced testimony clearly, positively and satisfactorily showing the entire contents of the will or all the material parts thereof. Having failed to do so the court erred in cancelling the will which was filed and offered for probate and in rejecting same and in appointing an administrator to administer the estate of John F. Reed, deceased, according to the statutory law of descent and distribution.

For the error indicated the cause is remanded with directions to the trial court to probate the will filed and offered and to administer the estate thereunder in accordance with the terms of the will filed and offered for probate.