Porter *v.* Sheffield, Administrator.

4-8452                                    208 S. W. 2d 999

Opinion delivered March 1, 1948

*Peter A. Deisch,* for appellant.

*A. M. Coates,* for appellee.

Ed. F. McFaddin, Justice. This appeal results from a proceeding instituted by appellants to establish an alleged lost will of Fred Polatty, who died August 31, 1946, a citizen and resident of Phillips county, Arkansas.

Immediately after the death of Fred Polatty, John C. Sheffield was appointed administrator of the estate. Sheffield made a diligent search for a will, and reported

to the probate court that no will could be found. There-upon the appellants (Eugene Porter, Elliott Porter and Jake Wise) filed suit in the chancery court to establish the alleged lost will. They named as defendants: (a) John C. Sheffield, administrator of the estate of Fred Polatty; (b) three other persons, each of whom was alleged to be a relative of Fred Polatty; and (c) "the unknown heirs of Fred Polatty."

Under the last designation, 14 persons filed a joint answer, thus: making themselves known, claiming to be the heirs of Fred Polatty, and resisting the attempt to establish a lost will. These 14 persons—whom we refer to as the Polatty heirs—were the real defendants below, and are the real appellees here. The cause was submitted to the chancery court on depositions. A decree was rendered dismissing the complaint, and finding that Fred Polatty died intestate, and adjudicating the respective interests of the 14 Polatty heirs. From that decree comes this appeal.

At the outset, we point out that this is a proceeding brought under §§ 14560-3, inclusive, Pope's Digest. Section 14560 reads:

"Whenever any will shall be lost, or destroyed by accident or design, the court of chancery shall have the same power to take proof of the execution of such will, and to establish the same, as in the case of lost deeds."

Section 14563 reads:

"No will of any testator shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the lifetime of the testator; nor unless its provisions be clearly and distinctly proved by at least two witnesses, a correct copy or draft deemed equivalent to one witness."

We have many cases involving these sections; some of them are: *Dudgeon* v. *Dudgeon,* 119 Ark. 128, 177 S. W. 402; *Bradway* v. *Thompson,* 139 Ark. 542, 214 S. W. 27; *Rose* v. *Hunnicutt,* 166 Ark. 134, 265 S. W. 651; *All-*

*nutt* v. *Wood,* 176 Ark. 537, 3 S. W. 2d 298; *Lumpkin* v. *Askins,* 187 Ark. 1009, 63 S. W. 2d 984; *Hanna* v. *Magee,* 189 Ark. 330, 72 S. W. 2d 237; and *Harrell* v. *Harrell,* 207 Ark. 905, 183 S. W. 2d 293. As regards the sufficiency of the evidence required to establish a lost will, we quoted, in *Hanna* v. *Magee, supra,* from 1 Underhill on Wills, § 175:

"The burden of proof to establish the execution and contents of the lost will is upon the party who claims under it. The petitioner is usually required to prove the execution and the contents of the lost will by evidence which shall be strong, cogent and convincing. It is sometimes said that the evidence must be clear, full and satisfactory, though he is never required to produce evidence sufficient to remove all reasonable doubt from the mind of the court."

In the more recent case of *Harrell* v. *Harrell, supra,* we said:

"Many cases have held that this power to restore and establish either a lost or a destroyed will or deed will be exercised only upon the clearest, most conclusive and satisfactory proof, . . ."

With the foregoing cases and general principles established, we proceed to state the facts in this case, and then to weigh the evidence by the recognized scales.

I. *Drafting of the Will.* Fred Polatty lived in Phillips county for a number of years. In the last years of his life he operated a store and lived in a room adjoining it. His wife, Mary Polatty, died early in March, 1946; and he was without children, or relatives, in the State of Arkansas. On March 26, 1946, he went to the office of K. T. Sutton, an attorney in Helena, and gave him instructions as to the drafting of a will. Sutton prepared the instrument, and mailed it to Polatty the next day. A few days later Polatty returned to Sutton, desiring certain changes in the draft. Sutton made the changes, and mailed the new instrument — unsigned — to Polatty on April 6, 1946. That an instrument was prepared for execution is shown by abundant proof: the stenographer

who typed the will produced her shorthand notes showing both the first and the second draft; and from these notes she typed a copy which was introduced in evidence.

II. *The Witnessing of the Will.* We come then to the more serious question: Was the will duly witnessed? Two persons were offered as witnesses to the will. Rudolph Lederman testified that he went with Fred Polatty to Sutton's office, and understood that a will was to be prepared; that some time between April 24th and May 1, 1946, witness went to Polatty's store, and Polatty:

". . . pulled the will out of the safe and put it on top and said, 'Rudolph, I want you to sign it, and I want Bill Coburn to sign it, and Mr. Clark to sign it.' "

Lederman testified that Polatty had already signed the instrument, and that Lederman signed as a witness.

Neither side offered Coburn as a witness. The other person produced as a witness was E. E. Clark. He testified, on direct examination, that he signed a paper for Fred Polatty in the spring of 1946, and that he understood that it was a will he was witnessing; that Polatty said it was a will, and witness signed the paper and did not read it. Then the following occurred in the cross-examination of this witness:

"Q. . . . how many papers did Mr. Polatty ask you to sign? A. Just one. Q. As I understand it, you didn't know what the paper was that you signed? A. No. Q. Did he tell you it was in connection with some will? A. No, he told me they were trying to mess him out of his business and asked me to sign the paper. Q. He said they were trying to beat him out of his business and property and asked you to sign the document for him and you are positive during that period of time, three or four months, you only signed one time for him? A. Yes. Q. I am going to hand you what appears to be the executor's bond of Fred Polatty executed on the 20th day of March, 1946, and ask you if that is your signature to that bond right below the signature of Fred Polatty? A. Yes, it is. Q. That is the only document you signed?

A. Yes. Q. Is that the instrument you signed for Fred Polatty there? A. Yes."

E. E. Clark then identified—as the only paper he had signed for Fred Polatty—the bond of Fred Polatty as executor of the estate of his wife, whose estate was being administered in the Phillips Probate Court. Appellants were entirely unsuccessful in their efforts to weaken the quoted testimony of E. E. Clark, who had been called by them.

Thus the evidence fails to show that Fred Polatty ever had two witnesses to his will; and, therefore, appellant's proof fails to show a duly executed will under the requirements of § 14512, Pope's Digest. Until it was shown that a will had been duly executed, there could, of course, be no establishment of a lost will.

III. *Destruction of the Will.* There is another and more cogent reason why there could be no decree in this case establishing a lost will; and that is the fact that appellants failed to overcome the presumption that Fred Polatty had destroyed the alleged will. The proof showed that Fred Polatty kept his papers in the safe in his room, and that he had access to the alleged will at all times. It was not shown that anyone else ever had access to the safe or the will. After Fred Polatty's death the alleged will could not be found. In *Rose* v. *Hunnicutt, supra,* we said:

"It will be presumed that a testator destroyed a will executed by him in his lifetime, with the intention of revoking same, if he retained custody thereof, or had access thereto, and if it could not be found after his death."

The stated presumption may be overcome by proof —as was done in *Bradway* v. *Thompson, supra*—but in the case at bar the evidence is insufficient to overcome such presumption. One witness testified that Fred Polatty—two or three weeks prior to his death—talked to the witness about a will. Here is the record:

"Q. Do you remember whether he said anything about a will or not? A. I believe he told me that he was

intending to make a will of some kind, but never told me definitely whether he had accomplished this or not. Q. But he did say that at his death he wanted the store, fixtures and stock of goods to go to Jake Wise? A. Yes, that was the statement he made.

. . . . . . .

"Q. But he did tell you he had contemplated making a will but had not gotten around to it? A. He talked about making a will, but never told me definitely whether he had or not. He never showed it to me. Q. Did he say anything about Mr. Eugene Porter and son? A. He spoke about Mr. Porter often. Q. You don't know whether Mr. Polatty made a will or not? A. No. Q. He did not tell you that he had made a will, did he? A. No."

The foregoing excerpt from the record is a fair summary of the evidence introduced in the effort to overcome the presumption that Polatty had, himself, destroyed the will. In short, there is no substantial evidence to overcome the said presumption; and the chancery court was correct in refusing to establish the lost will.

## CONCLUSION

The decree of the chancery court is affirmed insofar as it refused to establish the lost will. The chancery court went further, however, and decreed that certain of the Polatty heirs had designated interests in the estate. This determination of heirship and distribution was without sufficient proof, and is also wanting in other controlling respects; so that part of the decree is vacated. In all other respects the decree is affirmed; and all costs are adjudged against the appellants.