Sandra CONKLE *v.* Charles W. WALKER

87-242                                              742 S.W.2d 892

Supreme Court of Arkansas
Opinion delivered January 19, 1988

*Vaughan and Bamburg*, by: *Keith Vaughan*, for appellant.

*Rice, Batton, Pierce & Swift, P.A.*, by: *Mackie M. Pierce*, for appellee.

JACK HOLT, JR., Chief Justice. This appeal is from an order establishing a lost will and admitting it into probate. Guy William Walker was a member of the United States Army, stationed at Fort Campbell, Kentucky. In the spring of 1985, his company was deployed to the Sinai Peninsula. Prior to his departure, a will was prepared for Walker by an army legal officer. After his death the will could not be located, and a dispute arose over its execution as well as its existence. The probate court found the evidence sufficient to enter an order establishing the lost will and admitted it into probate. We disagree with this finding and reverse.

Upon Walker's return from the Sinai, he was killed along with 200 other members of his unit in an airplane crash near Gander, Newfoundland, on December 12, 1985. Thereafter, the appellee, Charles W. Walker, petitioned to admit his son's will to probate. The proffered will was an unsigned copy of a will that was prepared for Walker by Captain Church of the Judge Advocate General's Corps. The will left Walker's entire estate to his father and step-mother. The appellant, Sandra Conkle, Walker's natural mother, objected to the probate of the lost will.

The probate judge admitted the will into probate and appointed appellee as executor. The order stated:

> That the instrument offered for Probate is a copy of the Last Will and Testatment of the deceased, Guy William Walker. That the Court found that from the testimony of Captain Russell A. Church, Judge Advocate General's Corps, U.S. Army, Charles Kelly, and Kenneth Kimmel, that the copy of said Will offered for Probate was executed in all respects according to law when the Testator was competent to do so and acting without undue influ-

ence, fraud, or restraint; that the Will was not revoked, and the instrument offered for Probate is his Last Will and Testament which was in existence at the time of the death of the Testator.

Conkle raises two arguments on appeal: (1) the probate court was wrong in finding the copy of Walker's will was properly executed; and (2) the probate judge erred in finding the presumption of revocation was rebutted. Probate cases are tried *de novo* on appeal, and the decision of the probate judge will not be reversed unless it is clearly against the preponderance of the evidence. *Sullivant v. Sullivant*, 236 Ark. 95, 364 S.W.2d 665 (1963); *Ross v. Edwards*, 231 Ark. 902, 333 S.W.2d 487 (1960).

Generally speaking, lost or destroyed wills are established by an action in chancery. Ark. Stat. Ann. § 60-301 (Repl. 1971). However, Ark. Stat. Ann. § 62-2004(b) (Repl. 1971) grants the probate court additional jurisdiction in matters of "heirship, adoption, and (concurrent with jurisdiction of other courts) jurisdiction to restore lost wills and for the construction of wills *when incident* to the administration of an estate . . . ." (Emphasis added.) *See Cross v. McLaren*, 223 Ark. 674, 267 S.W.2d 956 (1954).

The proceedings here were to restore a lost will incident to the administration of Walker's estate; therefore, jurisdiction is proper in probate court.

In order to establish a lost will, the probate court must follow the dictates of Ark. Stat. Ann. § 60-304 (Repl. 1971) which provides:

No will of any testator shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the lifetime of the testator; nor unless its provisions be clearly and distinctly proved by at least two [2] witnesses, a correct copy or draft being deemed equivalent to one [1] witness.

The proponent of a lost will has the burden of proving the execution of a will and its contents. *Porter v. Sheffield*, 212 Ark. 1015, 208 S.W.2d 999 (1948). One seeking to establish a

lost will must prove its execution and contents by strong, cogent and convincing evidence, though he is not required to produce evidence sufficient to remove all reasonable doubt. *Hanna* v. *Magee*, 189 Ark. 330, 72 S.W.2d 237 (1934). On no subject, perhaps, are statutes so strict in requiring a writing executed and attested in certain forms as in the case of wills, and, "while it is firmly established that a lost will may be proved by secondary evidence, the courts have always required such evidence to be direct, clear and convincing." *Id*. at 337, quoting from *Clark* v. *Turner*, 38 L.R.A. 433; 14 Enc. of Evidence 465; *see also Harrell* v. *Harrell*, 207 Ark. 905, 909, 183 S.W.2d 293 (1944). We think the facts introduced into evidence are not sufficient to overcome the standard of proof necessary to prove Walker's lost will was executed.

Captain Church testified that in April and May of 1985, before the members of Alpha Company were deployed to the Sinai, he helped them put their legal affairs in order, which included preparing wills. Walker completed a will questionnaire providing the necessary information. Captain Church recalled working with Walker's will because something was missing from his worksheet and it was necessary to track him down through his first sergeant to obtain the information needed for the will. Although he prepared about 260 wills during that period of time, Captain Church specifically remembered Walker's will form because he was from Pulaski County. The wills were prepared from the will worksheet by a secretary in his office on a word processor. After the wills were prepared, they were folded and placed in a "shotgun" envelope and sent to the first sergeant of Alpha Company who distributed them to the soldiers.

After the soldiers had time to review their wills, a time and place was set for execution. Captain Church went to the Alpha Company orderly room where fourteen wills were executed. He took seven of fourteen soldiers at a time and lined them up at a long counter with their wills in front of them. The Captain asked them a series of questions to determine their competency and then went down the line showing each soldier where to sign his will and at the same time, he had three people sign as witnesses. After all of the signatures were in place, he looked over the documents to insure the signatures were properly placed and the date was correct. He then signed the wills as notary, sealed the documents,

and handed them back to the soldiers with instructions as to where to keep the wills.

Captain Church recalled going to Alpha Company and executing fourteen wills because he wrote the date and number down on his pocket calendar. Otherwise, he testified that there was not anything peculiar about his meeting with Alpha Company that caused him to remember it. Captain Church's testimony up to this point concerned the standard operating procedures he utilized in the execution of wills with the various troops stationed at Fort Campbell.

In response to a question as to whether or not Walker was one of the individuals that executed his will that day, he replied, "I think he was. I can't say one hundred percent that he was but I think he was." Unfortunately, neither Captain Church nor his staff kept executed copies of the wills nor did they maintain a list of the various witnesses who purportedly signed the various wills that were produced by his office. Captain Church's testimony, for the most part, can be summed up by his statement when asked if he saw Walker sign the will, "I cannot be certain that he did."

Kenneth Kimmell testified he was stationed at Fort Campbell with Walker. He recalled a conversation he had with Walker in which Walker stated he wanted to make a will. In fact, he talked about making a will for four months. Walker later announced to Kimmell, "I got my will made up."

Charles James Kelley told the probate court that he rode to Jacksonville from Fort Campbell on the Fourth of July weekend with Walker. During that trip, Walker told him that in his will he was leaving all of his property to his father and Terry, his stepmother.

Charles Walker was the last witness to testify. He stated that after his son's death, he went through his son's personal belongings and papers at the house but did not locate a will. The only personal effects that survived the plane crash were his dog tags and class ring.

Unless it can be said that the evidence was sufficiently strong, cogent and convincing, or that the proof is satisfactory and most conclusive that the will was duly executed, there can be no establishment of a lost will. *Porter* v. *Sheffield, supra.* Under the

circumstantial evidence before us, we cannot say the will was duly executed, and we reverse on this ground. Therefore, we do not consider Conkle's argument that the probate judge erred in finding the presumption of revocation was rebutted.

Reversed.

PURTLE, J., not participating.