LAVENUE *v.* LEWIS.

Opinion delivered February 15, 1932.

*O. E. Williams,* for appellants.

*C. D. Atkinson* and *Earl U. Hardin,* for appellees.

McHANEY, J.   This lawsuit involves an attack on the will of the late B. F. Johnson, of Washington County (who died April 20, 1929,) on account of the alleged undue influence of his second wife, Mrs. Lydia Johnson, who predeceased her husband nearly four years, she having died December 25, 1925.   By his first marriage B. F. Johnson had two children, J. O. Johnson and Vicie (Johnson) Arnett, both now deceased, and both leaving several children, appellant, Mrs. J. L. Lavenue being one of five children of J. O. Johnson the others being parties to this litigation.   A paragraph in the testator's will reads as follows: "Item 6.   I have heretofore made advancements out of my property to my sons Bert B. Johnson and to J. O. Johnson, now deceased, which advancements have been fully equal to their respective interests in all of my estate, and because of such advancements so made by me, neither the said

son, Bert B. Johnson, nor the heirs of the said J. O. Johnson, are to receive any interest in or share of my estate.'' Item 7 makes the same reference to the heirs of Hugh L. Johnson, another deceased son. Bert B. Johnson and Hugh L. Johnson were children of the testator by his second wife. At the conclusion of the testimony for appellants the court directed a verdict for appellees, upon which judgment was entered and this appeal followed.

The only question presented is whether the evidence was sufficient to take the case to the jury on the ground of undue influence of Mrs. Lydia Johnson. Mrs. Lavenue testified over objections that her father, J. O. Johnson, had received as advancements from her grandfather, the testator, only $1,000, and that he had not received his share of the estate. This evidence was incompetent under the rule stated in *LeFlore* v. *Handlin,* 153 Ark. 421, 240 S. W. 712. In that case similar testimony was held to be incompetent, the court stating: ''The above testimony therefore was wholly incompetent, because it cannot be proved that the testatrix was mistaken in a fact which she clearly stated in the will for the purpose of showing that her intention was really different from that which her language plainly expresses. Nor is such proof competent for the purpose of showing that, but for the mistake of fact, her intention would have been different and expressed in a different manner.''

''The first great rule in exposition of wills (to which all other rules must bend)'' said Chief Justice MARSHALL, in *Smith* v. *Bell,* 31 U. S. 68, ''is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law.'' Over and over again we have said the same thing in substance in cases too numerous to mention. ''Every man,'' said Judge WOOD in *Taylor* v. *McClintock,* 87 Ark. 243, 112 S. W. 405, ''has the untrammeled right to dispose of his property by will as he pleases, with only such limitations as the statute may impose.'' So here, the testator had the right to disinherit the J. O. Johnson heirs for the reason as-

signed in the will, or for any other reason, or without assigning any reason.

Although the testator was about 90 years of age at the time the will was executed, it is conceded that he had the mental capacity to make it, and his testamentary capacity is not questioned. Only the undue influence of the wife is charged. In *McCulloch* v. *Campbell*, 49 Ark. 367, 5 S. W. 590, the rule in this regard is thus stated: "As we understand the rule, the fraud and undue influence which is required to avoid a will must be directly connected with its execution. The influence which the law condemns is not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion, or any other cause deprives the testator of his free agency in the disposition of his property. And the influence must be specifically directed toward the object of procuring a will in favor of particular parties. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relation with them at the time of its execution." The above was quoted by Judge BATTLE in *Smith* v. *Boswell*, 93 Ark. 66, 124 S. W. 264, as was also the following from 3 Elliott on Evidence, § 2696: "The influence of the husband over the wife, that of the wife over the husband, of the parents over the children, and of the children over the parents, are legitimate, so long as they do not extend to positive dictation and control over the mind of the testator."

When considered in the light of these rules, the evidence wholly fails to show any undue influence of the kind the law recognizes. No doubt Mrs. Lydia Johnson had a great influence over her husband, the testator, and justly so. She had lived with him more than a half century at the time of her death, helped him to accumulate a fortune of nearly $100,000, bore him fourteen children, and, so far as this record discloses, made him a loving and lovable wife. Certainly she had an influence

over him, but not an "undue influence," within the meaning of that term in the law. There was nothing wicked or malign about it, but, on the contrary, was just and proper, springing from that holy relation of husband and wife. Even though it may be said the evidence tends to establish the fact that she preferred her own children to those by a former wife and sought to influence the testator's benevolence in their favor, still it fails to show that she accomplished this end, as two of her own children were placed in the same category with the appellants, and one of them appeared to be her favorite son. She was not present when the will was prepared by an eminent lawyer in Fayetteville, and there is nothing to show that she dictated its terms or had any control over the mind of the testator. Moreover, the testator made no change in the will after her death, although he lived and was mentally competent nearly four years thereafter.

We do not review the evidence as no useful purpose could be served thereby. The court properly directed a verdict for appellees, as there was no substantial evidence of undue influence in the making of this will.

Affirmed.