MOON DISTRIBUTORS, INC., ET AL v. CARL THOMAS WHITE, JR., ADMINISTRATOR, ET AL

5-4707                                    434 S.W. 2d 56

Opinion Delivered November 18, 1968
[Rehearing denied December 16, 1968.]

*Hall & Tucker* for appellants.

*Cockrill, Laser, McGehee, Sharp & Boswell* for appellees.

GEORGE ROSE SMITH, Justice.    This action for the wrongful death of Wandasue White was brought by her surviving husband, the appellee, who is the administrator of her estate.    The appeal is from a verdict and judgment awarding $1,500 to the estate; $67,500 for the husband; $50,000 for the decedent's stepdaughter, Karen White; $75,000 for the couple's adopted daughter, Sherry White; and $800 to White for his property damage.    For reversal the appellants argue two points of law, both of first impression, and question the liberality of the awards.

First, the appellants insist that the trial court erred in submitting the case to the jury both upon specific as-

sertions of negligence and upon the doctrine of *res ipsa loquitur*. The appellants take our prior cases to hold that when the plaintiff introduces proof of specific acts of negligence he thereby abandons his right to have the issue of *res ipsa* submitted to the jury.

Upon this issue the facts, at least in broad outline, are pertinent. On March 30, 1967, Mrs. White and two other women were traveling on Interstate 30, a divided four-lane highway. Coming from the other direction was a wrecker towing a dump truck. Both vehicles were owned by the appellant, Moon Distributors. Its employee, the appellant Paul Hastings, was driving the wrecker. For some reason not shown by exact proof the dump truck came unhitched, crossed the median, and ran over the White car, killing its occupants.

The plaintiff offered proof to show (a) that the coupling mechanism of the wrecker, which had been designed by Paul Hastings, was defective; (b) that the wrecker was being driven at an excessive speed; and (c) that just before the accident Hastings swerved from one lane to the other so suddenly as to cause the dump truck to fishtail before it came loose. The defendants contested that proof with evidence of their own. The court gave AMI instructions covering speed, control, and the statutory duties of one who is towing another vehicle. The court also gave AMI 610, on *res ipsa*. The final paragraph of AMI 610 was omitted, in accordance with the Note on Use, because specific acts of negligence were also being submitted.

The court was correct. In *Johnson* v. *Greenfield,* 210 Ark. 985, 198 S.W. 2d 403 (1946), we held that the plaintiff did not waive the doctrine of *res ipsa* merely by pleading specific negligence, but we did not explicitly reach the question of whether both theories might go to the jury. Elsewhere, however, the decided weight of authority approves that procedure in a case like this

one, where the exact cause of the accident cannot be proved with precision.

The landmark case is *Cassady* v. *Old Colony Street R. Co.,* 184 Mass. 156, 68 N.E. 10, 63 L.R.A. 285 (1903), where the court said:

> "It is true that, where the evidence shows the precise cause of the accident . . . there is, of course, no room for the application of the doctrine of presumption. The real cause being shown, there is no occasion to inquire as to what the presumption would have been as to it if it had not been shown. But if, at the close of the evidence, the cause does not clearly appear, or if there is a dispute as to what it is, then it is open to the plaintiff to argue upon the whole evidence, and the jury are justified in relying upon presumptions, unless they are satisfied that the cause has been shown to be inconsistent with it. An unsuccessful attempt to prove by direct evidence the precise cause does not estop the plaintiff from relying upon the presumption applicable to it."

A similar view was taken in *Wells* v. *Asher,* Mo., 286 S.W. 2d 567 (1955):

> "*Legally,* defendant's argument that plaintiff was precluded from a res ipsa submission by proof of specific negligence is, under the facts of the instant case, utterly self-destructive. For, it is firmly-established in this jurisdiction that, 'even though the plaintiff's evidence may tend to show the specific cause of the accident, he will nevertheless not lose the benefit of the doctrine, nor be deprived of the right to rely upon it in the submission of his case, if, after his evidence is in, "the true cause is still left in doubt or is not clearly shown."'"

Many of the cases were reviewed in *Weigand* v. *Pennsylvania R. Co.,* 3rd Cir., 267 F. 2d 281 (1959), where the court said:

> "However, we have before us not only a res ipsa claim but one capable of some specific proof regarding the railroad's alleged negligence. In these peculiar circumstances to force the plaintiff to abandon one of his theories is not only illogical but unfair. Whichever he chose might fail and the discarded contention might have convinced the jury."

See also *Freitas* v. *Peerless Stages,* 108 Cal. App. 2d 749, 239 P. 2d 671, and the annotation thereto in 33 A.L.R. 2d 778 (1952).

The case at bar illustrates the wisdom of the rule. As a practical matter, the eyewitnesses to the tragedy could not even describe what they saw without bringing specific negligence into the case. No description of the occurrence would be complete without some reference to Hastings' speed and to the dump truck's fishtailing. The jury's first question would naturally be: Was the coupling between the wrecker and the dump truck defective? Realistically, the plaintiff had to answer that question. To compel the plaintiff to choose between specific negligence and *res ipsa* would put him in this dilemma: If he chose specific acts, the jury might find itself unable to decide that any one of the three asserted causes of the accident had been proved by a preponderance of the evidence. Yet, if the plaintiff chose *res ipsa,* the jury would be completely in the dark about the duties imposed by law upon Moon to drive at a reasonable speed, to keep its vehicles under control, and to provide a proper coupling device. As the court said in the *Weigand* case, *supra,* to put the plaintiff in that dilemma would be not only illogical but unfair.

The cases principally relied upon by the appellants are not out of harmony with the rule we are adopting. In *Reece* v. *Webster,* 221 Ark. 826, 256 S.W. 2d 345 (1953), the defendant's tractor exploded and fatally in-

jured a boy who was walking past it. On that proof alone the plaintiff could have relied on *res ipsa*. But the plaintiff went further and directed his entire proof to showing that the explosion was caused by a defective sediment bulb that allowed gasoline to drip upon hot metal and explode. No other cause of the explosion was suggested "either in pleadings, proof or argument." Hence, in the language of the landmark *Cassady* case, *supra,* where the evidence shows the precise cause of the accident there is no room for presumption.

Our holding in *Ford Motor Co.* v. *Fish,* 232 Ark. 270, 335 S.W. 2d 713 (1960), is even farther from the mark. There the plaintiff testified that as he was driving his truck down the highway the brakes suddenly locked, causing the truck to leave the highway and turn over, injuring him. Unlike the situations in the *Reece* case, *supra,* and in the one at bar, a mere account of how the accident happened did not, in the *Fish* case, make a submissible issue of *res ipsa*. That is, *res ipsa* involves a showing that the plaintiff himself was not negligent. That showing was not made by Fish, because, as we observed, "automobiles ordinarily depart the road through negligence of the operator, rather than through negligence of the manufacturer." Hence Fish was properly compelled to prove the specific cause of the accident, because it was really an instance of *res ipsa non loquitur:* The thing does not speak for itself.

On the first point we conclude that the trial court was right in submitting all the issues to the jury.

Secondly, the appellants contend that neither Karen White, a stepdaughter, nor Sherry White, an adopted daughter, is entitled to assert a cause of action for Wandasue White's death. The two contentions must be discussed separately.

Considering Sherry's case first, the adoption statute provides that the adopting parents shall have "the

right of recovery" for the child's death by wrongful act, but there is no corresponding provision that the child shall have the right of recovery for an adoptive parent's death. Ark. Stat. Ann. § 56-109 (1947). We do not agree with the appellants' argument that the omission shows a legislative intent to deny an adopted child's right to assert a cause of action for the wrongful death of a foster parent. In the case of the adopted child's death the legislature had to choose between investing the cause of action in the natural parents and investing it in the foster parents. It chose the latter, specifically referring to "the" right of recovery. No similar choice had to be made with respect to the foster parent's death; so the appellants' argument fails.

With respect to Karen, a stepmother stands *in loco parentis* to the child when, as here, the two live in the same home as mother and daughter. See *Dodd* v. *United States*, 76 F. Supp. 991 (W.D. Ark. 1948), and *Miller* v. *United States*, 8th Cir., 123 F. 2d 715 (1942). Nevertheless, the appellants insist that a stepdaughter cannot recover for pecuniary injuries suffered upon the death of her stepmother, for the reason that the statute refers to "persons to whom the deceased stood in loco parentis" only with respect to damages for mental anguish and not with respect to damages for pecuniary injuries. Ark. Stat. Ann. § 27-909 (Repl. 1962). Hence, it is said, the court should not have submitted to the jury Karen's cause of action for pecuniary loss.

We do not construe the statute so narrowly. Both § 27-908 and § 27-909—sections of the same act—have reference to the beneficiaries of the statute. In *Peugh* v. *Oliger*, 233 Ark. 281, 345 S.W. 2d 610 (1961), we held that a foster daughter was to be considered as the decedent's "next of kin," within the meaning of the act. The record in the *Peugh* case shows that the foster daughter had not been legally adopted by her foster mother; so the court was actually considering an *in loco*

*parentis* relationship. Hence, on the authority of that case, we hold that a step daughter to whom the decedent stood in *loco parentis* is entitled to recover compensatory damages both for pecuniary losses and for mental anguish actually suffered by reason of the stepparent's death. (We are not overlooking our decision in *Fountain* v. *Chicago, R.I. & P. Ry.*, 243 Ark. 947, 422 S.W. 2d 878 [1968], which overruled the *Peugh* case in part. It was not, however, our intention in the *Fountain* case to construe the statute more strictly than we did in *Peugh*. To the contrary, we were careful to say: ''We have no quarrel with the allowance to the foster daughter [in *Peugh*], although that recovery was permitted by a novel construction of the statute.'' We adhere to that position.)

Thirdly, the appellants complain that the verdicts are excessive. Since we are unanimous in finding that the awards neither demonstrate prejudice on the part of the jury nor shock the conscience of this court, no useful purpose would be served by discussing this contention at great length.

Wandasue White, according to the proof, was a truly exceptional wife and mother. When she married the appellee, Tom White, in 1961, Tom's daughter Karen was four years old and was living with his parents rather than with her divorced mother. Wandasue took Karen into her home and could not have treated her with greater affection had the child been her own daughter. When the Whites found that Wandasue could not have children herself they adopted Sherry, then sixteen months old. Sherry was afflicted, having a cleft palate. The surgeon who was able to partly correct the deformity expressed his surprise that anyone would adopt a child with such an affliction. Yet Wandasue White not only had that compassion but also labored patiently and unselfishly with the child, teaching her to talk in a normal way. Considering what each of the children lost by Wandasue's death, we cannot say that either of their awards is excessive.

Nor do we so regard the $67,500 verdict for White himself. At her death Wandasue was 28, with a life expectancy of almost 47 years. She was earning $6,-216 annually as an employee of a Veterans Administration hospital. According to the proof her future earnings, reduced to present value, would be $119,272, without taking into account increases in salary that were to be reasonably expected. In the light of our holding in *Strahan* v. *Webb,* 231 Ark. 426, 330 S.W. 2d 291 (1959), and making proper allowance for White's mental anguish and loss of consortium, the verdict cannot be considered excessive.

Affirmed.

BYRD, J., not participating.

HARRIS, C.J., dissents.

CARLETON HARRIS, Chief Justice. This was a terrible tragedy, and I have no fault to find with the amount of money awarded appellees. However, I think we are departing somewhat from prior cases in approving the submission by the trial court to the jury of two conflicting theories of negligence. Specifically, I do not think the instruction permitting the jury to apply the doctrine of *res ipsa loquitur* should have been given.

In *Ford Motor Company* v. *Fish,* 232 Ark. 270, 335 S.W. 2d 713, we pointed out that one of the essential elements to make *res ipsa loquitur* applicable to a given case is the absence or unavailability of direct evidence of negligence. Quoting from 65 C.J.S. *Negligence* § 220.6, we said:

"Although, * * * the doctrine of *res ipsa loquitur* provides a substitute for direct proof of negligence, the rule is nevertheless one of necessity to be invoked only when, under the circumstances in-

volved, direct evidence is absent and not readily available.''

In the case before us there is a great deal of evidence as to specific acts of negligence. William Bailey testified that he was behind the dump truck as it approached the scene where the collision occurred, and that the wrecker and dump truck were traveling between 60 and 65 miles per hour; that the driver of the wrecker ''changed sharply into my lane in front of me and I had to hit my brakes to keep from colliding with him; it was ''fishtailing'' around.

James Summers testified that the driver of the wrecker ''whipped out,'' and that it wasn't a smooth lane change. He said that the dump truck was bouncing up and down, and kept bouncing until it broke loose[1].

Thomas Christenberry testified that the wrecker and truck passed him when he (Christenberry) was traveling at a speed of 60 miles per hour, and that the dump truck was weaving and bobbing up and down.

Robert Ferguson, operator of a wrecker service and body shop, testified that the hookup was not safe; that the tow bar was raised too high, permitting the towed truck upon application of brakes, to come up on the wrecker (this causing slack in the cable, which resulted in its breaking when the slack was taken up); the safety chains had too much slack, and this caused them to break after the cable broke; the weaving of the wrecker and tow truck either caused the stabilizer bar to break or weakened it. He also testified that the maximum safe speed for a wrecker rig of the size of the one involved was 40 to 45 miles per hour.

If direct evidence had not been readily available, I would certainly have permitted the use of the *res ipsa* instruction—but that was not the case.

---

[1] It could certainly be considered by a jury that the driver of the wrecker could have felt this bumping, and thereupon slowed or stopped his vehicle.

My principal objection to the use of instructions relating to both specific negligence and *res ipsa loquitur* in the same case is that I consider such use to be confusing to the jury. In most cases, *res ipsa* does not come into play, and the burden of proving negligence which caused the injury rests upon the plaintiff; however, under the *res ipsa* doctrine, the defendant is burdened with a presumption of negligence, and it is up to him to refute this presumption, though, on the whole case, the burden is on the plaintiff. To me, to tell a jury on the one hand, that the burden of proving specific acts of negligence is on a plaintiff—but on the other hand, under the *res ipsa* instruction, the defendant must prove he was not negligent (and this, in my view, is what it amounts to), can only result in perplexing the jury. It also seems to me that it becomes further confusing when the court gives the instruction, as it did in this case, "The fact that an accident occurred is not, of itself, evidence of negligence on the part of anyone." This instruction might well appear to a layman to be the very antithesis of the doctrine of *res ipsa loquitur*, namely, that the very happening of the event is evidence of negligence on the part of the person having control of the instrument causing the injury.

In *Reece, Administrator* v. *Webster*, 221 Ark. 826, 256 S.W. 2d 345, we approved the rule governing the doctrine of *res ipsa loquitur* with which I thoroughly agree:

"Of course, in cases where the plaintiff has full knowledge and testified to the specific act of negligence which is the cause of the injury complained of, or where there is direct evidence as to the precise cause of the accident and all of the facts and circumstances attendant upon the occurrence clearly appear—*then the doctrine would not apply*"[2].

---

[2]Emphasis supplied.

638

Accordingly, I would reverse, because of the giving of this instruction.