Myron WITT and Ralph Heyman as Executor of the Estate
of Ruth Witt Margolis *v.* Brooks ROSEN, Executor of the
Estate of Sidney M. Brooks

88-266 765 S.W.2d 956

Supreme Court of Arkansas
Opinion delivered March 6, 1989

*Pope, Shamburger, Buffalo and Ross*, by: *Robert D. Ross* and *Brad A. Cazort*, for appellant.

*Rose Law Firm, A Professional Association*, by: *Vincent Foster, Jr.* and *James H. Druff*, for appellee.

STEELE HAYS, Justice. Mr. Sidney M. Brooks died on May 1, 1985, leaving a 1978 will which bequeathed $20,000 to Ruth Witt Margolis (Paragraph Third) and $15,000 to Myron Witt (Paragraph Fourth), a niece and nephew by marriage. However, a few months before his death Mr. Brooks executed a codicil which reads:

> I hereby revoke Paragraphs Third and Fourth of my said will since I have in the interim made *inter vivos* gifts to Myron Witt and Ruth Witt Margolis.

The estate was closed on September 17, 1985, but since Mr. Witt and Mrs. Margolis had received no notice, their motion to set aside the order was granted for the limited purpose of hearing their contest to the validity of the codicil. The probate judge

upheld the codicil and Mr. Witt and Mrs. Margolis's executor have appealed.[1]

Appellants have renewed their argument to the trial court, i.e., that the codicil is void due to a mistake of fact on which it is expressly conditioned. They presented evidence below that from the date of Mr. Brooks's original will in 1978, until the codicil in 1985, Mr. Witt received no gifts from Mr. Brooks. Mrs. Margolis's executor reported that she had received $500 from Mr. Brooks for her seventy-fifth birthday.

The appellants moved for summary judgment on the premise that the codicil was based on a mistake of fact, rendering the codicil void. The appellee also moved for summary judgment contending that there was no mistake of fact, or alternatively, if a mistake occurred it was not the type which would void the codicil. The Pulaski County Probate Judge granted summary judgment for the appellee, holding that he could not reasonably conclude that the language of the codicil was a mistake, but even if Mr. Brooks labored under a mistake, it was not the kind of mistake which allows the court to rewrite the will. The appellants appeal from this ruling.

■■ Probate and chancery cases are reviewed *de novo* on appeal, but the appellate court will not reverse the findings of the probate judge unless clearly erroneous. *Rose v. Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984). Also in an appeal from a motion for summary judgment, all the facts and circumstances are viewed in a light most favorable to the party against whom the motion is directed, the appellant in this case. After considering the arguments on appeal, we affirm the probate court.

■■ Generally, a will may not be set aside for mistake where the testator knew and approved its contents. Moreover, a revocation absolute on its face, the words of which the testator knows and approves, will not be set aside because the reasons which induced it are found to be based upon false assumptions or facts. The policy underlying this general rule is that death has silenced the testator, and determining the intent behind the

---

[1] Mrs. Margolis survived Mr. Brooks but died prior to the institution of this litigation.

revocation is too uncertain.

 Some courts, however, have created an exception. When the grounds upon which the testator proceeded in revoking a bequest appear in the instrument itself, some courts allow parol evidence to show that the error upon which the revocation was based is the nonexistence of that fact, and refuse to recognize the revocation. *Campbell* v. *French*, 3 Ves. Jr. 321 (1797). In *Campbell*, the testator, a resident of England, made a codicil revoking all legacies and bequests to his sister's grandchildren, who resided in America. The revocation provision mistakenly declared that the grandchildren were dead, when in fact they were not. Lord Loughborough held that no revocation occurred, "the cause being false." Since the testator was erroneously advised of the death of the grandchildren, it was reasonable to conclude that but for the misinformation, no revocation would have occurred.

 Even so, when the misstatement is one which is *peculiarily within the testator's knowledge or determination*, the falsity of such assertion will not prevent the operation of the clause of revocation. Where it appears from the instrument of revocation that the testator intended to determine for himself the existence or nonexistence of the stated grounds of revocation, and was not assuming the truth of information given to him by others, but acted notwithstanding his doubt as to the verity of the reason given, or where he must have known whether or not the ground of revocation was true, the revocation is effective. *Hayes' Executors* v. *Hayes*, 21 N.J. Eq. 265 (1871); *Appeal of Mendenhall*, 124 Pa. 387, 16 A. 881 (1889); *Giddings, Exr.* v. *Giddings et al.*, 65 Conn. 149, 32 A. 334 (1894).

The appellants argue that this court should adopt an exception allowing the invalidation of provisions in wills based upon a mistake of fact when the mistake appears in the will itself, and when the disposition that would have been made, had the truth been known, also appears in the will. The appellants rely on cases from Oregon, *Estate of LaGrand*, 47 Or. App. 81, 613 P.2d 1091 (1980), and Tennessee, *Union Planter National Bank* v. *Inman*, 588 S.W.2d 757 (Tenn. Ct. App. 1979), supporting this exception. *See also Gifford* v. *Dyer*, 2 R.I. 99, 57 Am. Dec. 708 (1952).

Mr. Brooks revoked paragraphs third and fourth of his original will giving the appellants $15,000 and $20,000 respectively, "since I have in the interim made *inter vivos* gifts to Myron Witt and Ruth Witt Margolis." On its face, the codicil is express and unambiguous. However, the appellants argue that it is expressly conditioned on their having received inter vivos gifts. The only evidence presented demonstrating that Mr. Brooks labored under a mistake was testimony from the interested parties. An affidavit from Mr. Myron Witt stated that he did not receive any gifts from Mr. Sidney Brooks after the date of the execution of the will. Furthermore, an affidavit from Mr. Ralph Heyman, executor of the estate of Ruth Witt Margolis, stated that from a review of the available records of Mrs. Margolis, no record of her having received from Mr. Brooks any substantial amount of money or property exists. Yet, the records show that Mrs. Margolis received a $500 cash gift on her seventy-fifth birthday.

Arkansas case law, though not precisely on point, indicates an unwillingness to allow extrinsic evidence to demonstrate mistake and to reform the testamentary instrument. In *LeFlore* v. *Handlin*, 153 Ark. 421, 240 S.W. 712 (1922), the testatrix died leaving only $100 to her son, Louis LeFlore. The will declared the testatrix's reason for the small bequest was that he had inherited a larger share of his father's estate, and that his financial condition was better than his brothers. Testimony showed that the testatrix was mistaken in assuming that Louis received a larger share of his father's estate. The opinion states:

> Where the intention is plainly expressed in the will, that intention must prevail and cannot be defeated by testimony *aliunde*, showing that the testator had in his mind a different intention from that expressed in his will, or that he would have expressed by his language a different intention if he had not been mistaken in some fact, financial or otherwise. . .

In *Lavenue* v. *Lewis*, 185 Ark. 159, 46 S.W.2d 649 (1932), the court refused to invalidate a testamentary instrument when extrinsic evidence showed that the testatrix was mistaken as to the amount of advancements given to her sons. Item six of the will declared:

> I have heretofore made advancements out of my property to my sons Bert B. Johnson and to J.O. Johnson, now deceased which advancements have been fully equal to their respective interests in all of my estate, and because of such advancements . ·. . neither son are to receive any share of my estate.

Although the will was contested on grounds of undue influence, the court refused to allow extrinsic evidence showing that the testator was mistaken as to the amount of the advancements offered for the purpose of reforming the instrument. By analogy, since the codicil clearly stated Mr. Brooks' intention to revoke the monetary bequests to the appellants, that express and unambiguous provision should not be defeated by the affidavits of Mr. Witt and Mr. Heyman.

In light of the evidence from interested parties, the chancellor held that there was insufficient evidence of the testator laboring under a mistake. In *Driver* v. *Driver*, 187 Ark. 875, 63 S.W.2d 274 (1933), this court held that "the mere making of a codicil gives rise to the inference of a change in intention." Mr. Brooks could do with his money as he saw fit for whatever reason or for no reason. As the court stated in *Lavenue* v. *Lewis*, 185 Ark. 159, 46 S.W.2d 649 (1932), "the testator had the right to disinherit the . . . heirs for the reason assigned in the will, or for any other reason, or without assigning any reason." Arguably, this conditional language served as an excuse for a disposition clearly intended, but which the testator did not feel inclined to explain. The trial court deemed Mr. Brooks competent to execute a codicil and, therefore, the appellants failed to meet the burden of persuasion that a mistake was indeed committed by the testator.

■ Even if it could be determined that the testator's revocation was induced by mistake, this type of mistake does not fall within the exception which allows a court to reform the instrument. If the codicil resulted from a mistake of fact, it was a mistake which was peculiarly within the knowledge of the testator. Whether or not Mr. Brooks gave the appellants inter vivos gifts was certainly knowledge within his ken. Therefore, despite the mistake, the clause of revocation would have been effective.

AFFIRMED.