Sharon STANDRIDGE, Guardian of Pamela Lynette
Standridge *v.* Annie Louise Thacker STANDRIDGE

90-253                                                    803 S.W.2d 496

Supreme Court of Arkansas
Opinion delivered January 28, 1991
[Rehearing denied March 4, 1991.]

*Young & Finley*, for appellant.

*Mobley & Smith*, by: *William F. Smith*, for appellee.

DAVID NEWBERN, Justice. In the earlier appeal in this case this court decided that the appellee, Annie Louise Thacker Standridge, had not been legally married to Carroll Standridge. *Standridge v. Standridge*, 298 Ark. 494, 796 S.W.2d 12 (1989). The probate court had appointed Annie administratrix of Carroll Standridge's estate and had approved a wrongful death claim settlement in which Annie and her son Johnny were to be beneficiaries. We assumed those decisions were influenced by the erroneous conclusion of the probate court that Annie and Carroll were married at the time of Carroll's death. Our opinion contained this sentence: "Because a number of decisions made by the probate court may have hinged on its holding that the marriage between Annie and Carroll was valid, we must remand the case."

Upon remand, neither party wished to offer further testimony or otherwise augment the record from the previous proceedings. The probate court determined that the only effect of our decision was invalidation of the marriage and that all other aspects of the previous probate court order remained the same due to the doctrine of *res judicata* because they had been once decided and not reversed on appeal.

■ The doctrine of *res judicata* prevents, by merger or bar, a second bringing of a claim which has been decided or which could have been decided in previous litigation. *See* Restatement (Second) of Judgments, Chapter 3., (1982); *Hyde v. Quinn*, 298 Ark. 569, 769 S.W.2d 24 (1989); *Smith v. Roane*, 284 Ark. 568, 683 S.W.2d 935 (1985). It does not determine the issues open to redecision when a case is remanded to a trial court from an appellate court; that is governed by the doctrine of law of the case. Except to the issue of validity of the marriage, the doctrine of law of the case did not apply in the probate court on remand in this case because other questions were left open and remanded to the probate court for decision. *Wilson v. Wilson*, 301 Ark. 80, 781 S.W.2d 487 (1989).

The probate court's conclusion that it was bound by its prior rulings on the issues left open by our decision on the first appeal

must have been reached toward the end of the proceeding because at the outset the court gave the parties an opportunity to present further evidence. They declined to do so, both sides relying on the record of the previous proceeding. As neither side wished to present further evidence, and both were satisfied to have the case decided on the record previously developed, we will exercise our authority of *de novo* review in probate cases and decide all issues which can be decided. *See Witt* v. *Rosen,* 298 Ark. 187, 765 S.W.2d 956 (1989); *Conkle* v. *Walker,* 294 Ark. 222, 742 S.W.2d 892 (1988).

The appellant is again Sharon Standridge on behalf of Carroll Standridge's daughter, Pam Standridge. The questions she presents are (1) whether Annie may be a beneficiary of the wrongful death claim settlement, (2) whether Annie's son Johnny Thacker may be a beneficiary of the wrongful death claim settlement, (3) whether Annie should be allowed to remain the administratrix of Carroll Standridge's estate, and (4) whether the lawyers who represented Annie as Carroll's personal representative and who settled the wrongful death claim are entitled to the contingency fee previously approved by the probate court as appropriate for the wrongful death settlement.

The judgment of the probate court is reversed. The case is remanded for implementation of this decision and to reinstate the probate court's jurisdiction for any further orders which may be necessary with respect to Carroll Standridge's estate.

### 1. Annie as beneficiary

The wrongful death action is a statutory creation. Ark. Code Ann. § 16-62-102 (1987). Subsection (d) of the statute lists the beneficiaries of the action. Included among the listed beneficiaries is "surviving spouse." Annie's sole claim to the proceeds of the wrongful death award is as Carroll Standridge's surviving spouse. In view of the invalidity of Annie's marriage to Carroll, she was not his surviving spouse, and thus she may not share in the proceeds of the settlement.

Annie argues that (a) Act 46 of 1989 validated her marriage to Carroll Standridge, (b) Sharon Standridge is precluded from contending the marriage was invalid because of laches, estoppel, and waiver, and (c) this court had no authority to promulgate

Ark. R. Civ. P. 58 and Administrative Order 2. which required us to hold the marriage invalid in the earlier appeal. Although Annie seeks no relief from the judgment, she states these arguments in the form of a "cross-appeal." We will treat them as arguments offered to sustain the result reached by the trial court in addition to the one given by the court.

### a. Act 46

In proceedings before the probate court after we remanded this case, Annie urged the court to declare her marriage to Carroll Standridge valid because the general assembly had subsequently passed a law purporting to validate all marriages, otherwise valid, which were or will be declared void because they occur after rendition of a divorce decree of one of the parties but before the decree is entered in accordance with Ark. R. Civ. P. 58 and Administrative Order 2. She now contends the trial court erred by not implementing the new law.

The conclusion of our earlier opinion was: "Annie and Carroll were not married. We reverse and remand the case for proceedings consistent with this opinion." In *Fortenberry* v. *Frazier*, 5 Ark. 200 (1843), this court stated:

> Whatever was before this court, and is disposed of, is considered as finally settled. The inferior court is bound by the judgment or decree as the law of the case, and must carry it into execution according to the mandate. The inferior court cannot vary it for any other purpose than execution. It can give no other or further relief as to any matter decided by the Supreme Court, even where there is error apparent; or in any manner intermeddle with it further than to execute the mandate, and settle such matters as have been remanded, not adjudicated, by the Supreme Court.

We have consistently followed that rule. *See Ferguson* v. *Green*, 266 Ark. 556, 587 S.W.2d 18 (1979); *Milsap* v. *Holland*, 186 Ark. 895, 56 S.W.2d 578 (1933). The probate court had no authority on remand to consider the issue of the validity of the marriage.

## (b) Laches, estoppel, and waiver

Annie claims Sharon Standridge waited too late to claim the invalidity of the marriage. Sharon claims she made the claim at the first opportunity after learning of the proposed wrongful death settlement of which she had asked to be, but had not been, notified by Annie.

This is but another attempt to relitigate the question of the validity of the marriage. As stated above, the law of the case prevents it. In addition, this is a question which could have been, but was not, raised in the prior appeal and is therefore barred. *Alexander* v. *Chapman*, 299 Ark. 126, 771 S.W.2d 744 (1989); *First American National Bank of Nashville, Tennessee* v. *Booth*, 270 Ark. 702, 606 S.W.2d 780 (1980).

## (c) Separation of powers

Annie's brief on this point contains extensive argument and citations with respect to the authority of this court to promulgate procedural rules such as Rule 58 and Administrative Order 2. Her conclusion is that we had no authority to promulgate Rule 58 requiring a chancellor to set forth a divorce decree on a separate document because Ark. Code Ann. § 16-13-319 (1987), which was enacted long before the promulgation of the rule, specifically states that chancellors are not required to reduce their decisions to writing.

We could answer this argument adequately by pointing out that it too goes to the validity of the marriage and is thus controlled by law of the case. We wish to point out, however, that the argument completely ignores the inherent authority of the court to make procedural rules, *State* v. *Sypult*, 304 Ark. 5, 800 S.W.2d 402 (1990); *Ricarte* v. *State*, 290 Ark. 100, 717 S.W.2d 488 (1986), as well as Ark. Code Ann. § 16-11-302(e) (1987), which states that old procedural laws would remain in effect "until such time as the Supreme Court prescribes rules regarding them . . . ."

## 2. Johnny as beneficiary

One of the categories of beneficiaries of a wrongful death claim under § 16-62-102(d) is, "persons to whom the deceased stood in loco parentis." Annie's minor son Johnny Thacker was

living with her and Carroll Standridge at the time of Carroll's death. We agree with Sharon Standridge's contention that the record before us is insufficient to sustain the probate court's conclusion that Carroll stood in loco parentis to Johnny.

■ There are no disputed facts with respect to the relationship between Carroll and Johnny. The probate court recited no factual conclusions on the issue but merely stated that Carroll stood in loco parentis to Johnny. If that statement was meant to be a factual conclusion, we find it was clearly erroneous. Ark. R. Civ. P. 52(a). More to the point, however, our holding is that the court erred not in finding facts but in characterizing the relationship as one in loco parentis on the basis of the facts it could reasonably have determined from the evidence. While we will not overturn the probate judge's factual determinations unless they are clearly erroneous, we are free in a *de novo* review to reach a different result required by the law. *Winn* v. *Chateau Cantrell Apartment Co.*, 304 Ark. 146, 801 S.W.2d 261 (1990); *Ferguson* v. *Green*, 266 Ark. 556, 587 S.W.2d 18 (1979).

The evidence on the relationship consisted of the following testimony by Annie:

> Q: Would you please describe for the benefit of the court the relative situation that existed between your husband, the decedent, Mr. Carroll Wayne Standridge, and your son, his stepson, what was their relationship?
>
> A: They was very close. He usually went to work with him, rode in the truck with him. We went hunting, fishing and swimming. Just about every day.
>
> Q: He was with the child seven days a week?
>
> A: Well, yeah.
>
> Q: Who furnished the support for this child from the time you and Mr. Standridge got married until the time of his death?
>
> A: Wayne and I.
>
> Q: The two of you?
>
> A: Yes.

Q: Did you receive any support from any other sources?

A: No.

Q: Now there has been some questions asked about the child's father, Mr. Thacker. Has Mr. Thacker ever acknowledged to be the father of this child?

A: He has never said he was the father.

Q: Has he denied consistently being the father of this child?

A: Yes, he did.

[At this point counsel and the court discussed an objection to this testimony. There was no ruling, but upon resumption of the questioning, the issue of Mr. Thacker's parenthood was not pursued.]

Q: Decree was he took one child, you took the other?

A: That's right.

Q: Which child did he take?

A: Teresa, the daughter.

Q: He did not choose to take the boy?

A: That's right.

Q: Has he paid any support whatsoever to you or to the boy since the decree was entered?

A: No. He bought one pair of pants, two shirts and a pair of shoes in the whole time.

Q: That's it?

A: That's it.

Q: The balance of the child support came from you and Mr. Standridge?

A: Yes.

Elsewhere in the record, Annie testified that Mr. Thacker had a "steady" visitation relationship with Johnny and explained that the reason he paid no support for Johnny was because in the

decree of divorce between her and Mr. Thacker he agreed to support the daughter, a victim of a serious disease requiring significant medical expenditures, and she, in turn, agreed to support Johnny.

Black's Law Dictionary (5th ed. 1979) defines "in loco parentis" as "in place of a parent; instead of a parent; charged factitiously with a parent's rights, duties, and responsibilities." In *Moon Distributors* v. *White*, 245 Ark. 627, 434 S.W.2d 56 (1968), we permitted a wrongful death award to a decedent's step daughter to whom the decedent stood in loco parentis. We noted that the step daughter in question lived in the home with her step mother "as mother and daughter," citing *Dodd* v. *United States*, 76 F. Supp. 991 (W.D. Ark. 1948), and *Miller* v. *United States*, 123 F.2d 715 (8th Cir. 1942) (reversed on other grounds), 317 U.S. 192 (1942). In *obiter dictum* the *Dodd* case opinion mentioned that the question is one of the intent of the parties. That was the holding of the court of appeals in the *Miller* case.

Nothing in the evidence of record indicates that Carroll Standridge had formed the intent to assume the duties and benefits of becoming Johnny's father. We cannot hold that the fact that Johnny lived with his mother and Carroll for a little over 15 months was enough to establish such intent. We hold that Johnny Thacker is not entitled to beneficiary status in the wrongful death settlement.

### 3. Annie as administratrix

In view of the invalidity of the marriage between Annie and Carroll Standridge, we order that she be replaced as administratrix of his estate. The priorities among possible appointees as to administer an estate are set forth in Ark. Code Ann. § 28-48-101 (1987). Had Annie been married to Carroll Standridge, she would have fallen in the second category of priority. Absent the marriage, she falls in the fourth or last category which is, "any other qualified person."

Pam Standridge, through her guardian Sharon Standridge, would have fallen in the third category as a person entitled to a share of the estate had she applied within 30 days of Carroll's death; however, her application was made after 30 days from the death.

■ The choice of administratrix is discretionary with the court. The statutory priorities are to be followed, however, absent unusual circumstances. *McEntire* v. *McEntire*, 265 Ark. 260, 577 S.W.2d 607 (1979).; *Knight* v. *Worthen Bank & Trust Co.*, 233 Ark. 465, 345 S.W.2d 361 (1961). The circumstances in this case are unusual. Given the fact that Pam Standridge will be the only beneficiary of the major asset of the estate, we hold it is appropriate for her guardian, Sharon Standridge, to be appointed administratrix in place of Annie Louise Thacker Standridge, and the probate court will enter that order on remand.

## 4. Attorneys' fees

Sharon Standridge argues that the lawyers who settled the wrongful death action should not be entitled to receive the contingency fee which had been approved by the probate court prior to the entry of the settlement. The court had approved a fee of 33 % of the recovery if settled before suit was filed, 40 % if suit was filed, and 50 % in the event of an appeal. Sharon's argument is that the lawyers who brought the wrongful death action violated Rule 1.7 of the Model Rules of Professional Conduct by representing conflicting interests in view of the disagreement over the entitlements of Annie, Johnny, and Pam.

■ In some cases it becomes inevitable that conflicts arise among beneficiaries of a wrongful death action. In view of the statutory priorities for selection of personal representative, it is likely that the personal representative will be a beneficiary who may have to share a limited recovery with others. Although counsel is hired by the personal representative, the wrongful death action is brought, in effect, on behalf of the beneficiaries. Clearly counsel owes a duty to present the claim of each beneficiary fairly and should not attempt to get a more favorable distribution for one at the expense of another.

We faced a similar issue recently in *Brewer* v. *Lacefield*, 301 Ark. 358, 784 S.W.2d 156 (1990), and its companion case, *Jones* v. *Jones*, 301 Ark. 367, 784 S.W.2d 161 (1990). In the *Brewer* case, the issue was whether beneficiaries of the wrongful death award whose interests were antagonistic to those of the personal representative were entitled to a portion of the award to pay their attorneys. We held that they were not, and that the only attorneys entitled to a fee from the proceeds of the wrongful death litigation

were those representing the personal representative of the decedent.

In the *Brewer* case we pointed out that prior to the distribution of the wrongful death proceeds no beneficiary had complained about the distribution of the funds. We wrote, "Should the personal representative or chosen counsel fail to provide adequate representation, application can be made to the probate court to either not approve or disallow the contracts entered into by the representative."

On behalf of Pam, Sharon Standridge unsuccessfully opposed appointment of Annie as administratrix. After the probate court approved the attorney fee contract between the estate and the lawyers pursuing the wrongful death claim in this case, Sharon Standridge sought notice of settlement negotiations, but she did not receive it. She learned that Annie and Johnny were to receive payments under the settlement proposal which were substantially larger than those intended for Pam, and at that point she objected and sought Annie's removal as administratrix. Her contention is that the lawyers were representing conflicting interests as evidenced by the fact that Annie and Johnny were to receive more money than Pam.

The settlement presented by Annie and approved by the probate court was in the amount of $445,071.00. It was "structured" with Annie, Johnny, Pam, and the lawyers to receive immediate cash amounts and then annuities to be purchased by Annie, as administratrix, for each beneficiary as well as in payment of the attorneys' fee.

The attorneys' fee in question here was earned by the lawyers in pursuing the wrongful death action, and not in presenting to the probate court the manner in which recovery would be divided. We know very little about what happened in the settlement negotiations, but we are aware that the probate court decided that Pam's share of the proceeds should be increased over that which had been proposed in the settlement. In other words, the conflict was aired, as it should have been, in the subsequent proceedings to determine distribution where Pam was represented by counsel.

Sharon Standridge's objection was earlier than those of the

objecting beneficiaries in the *Jones* and *Brewer* cases. The objection, however, was overruled because the probate court concluded that Annie was a proper personal representative. When the settlement was presented to the court, Sharon Standridge objected, and the settlement proposed by Annie was revised to increase Pam's portion.

We find no violation of Rule 1.7. The fundamental statement of the rule is, "A lawyer shall not represent a client if the representation of that client will be directly adverse to another client. . . ." The lawyers who brought the wrongful death action had only one client, and that was Annie as personal representative. *See Cude* v. *Cude*, 286 Ark. 383, 691 S.W.2d 866 (1985). The fact of our later determination that Annie should have been removed because of the invalidity of the marriage and her lack of priority for appointment as administratrix under the probate code has no bearing on evaluation of the conduct of the lawyers who brought the wrongful death action with permission of the court.

We find no conflict of interest requiring alteration of the previously approved fee contract for representation in the wrongful death action.

### Conclusion

This decision does not alter that portion of the probate court order of July 14, 1988, which approved a settlement of the wrongful death claim in the amount of $445,071.00. Nor does it alter the finding that the firm of Mobley and Smith is entitled to expenses and 40% of the wrongful death recovery in accordance with the previously approved contract between Annie, as personal representative, and Mobley and Smith.

As Pam Standridge becomes the sole beneficiary of the wrongful death settlement award, the question of whether and how it may be structured for her benefit are specifically left open for determination. Pam, in the person of her guardian, will be substituted for Annie as administratrix.

Reversed and remanded for proceedings consistent with this opinion.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. I concur. In the first appeal in this case, this court, in a 4-3 decision, held Annie Standridge's marriage to Carroll Standridge to be invalid. I filed dissenting opinions setting out my strong disagreement with the majority. *Standridge* v. *Standridge*, 298 Ark. 494, 499, 769 S.W.2d 12, 15 (Glaze, J. dissenting), *reh'g denied* 298 Ark. 494, 501-A, 771 S.W.2d 262 (1989) (Glaze, J. dissenting). While I am still of that same view, this court is bound to recognize the majority decision as the law of the case. Thus, because I do otherwise agree with the court's holding in this second appeal on the new or different issues, I reluctantly join even though I believe the results wrongfully and inequitably impact on Annie Standridge.