Betty B. EDDINS, Personal Representative of
the Estate of James M. Berry, Deceased *v.*
STYLE OPTICS, INC., and Sidney Dobbins

CA 99-1355                                                    35 S.W.3d 315

Court of Appeals of Arkansas
Division I
Opinion delivered September 27, 2000
[Petition for rehearing denied October 25, 2000.]

Diana M. Maulding, for appellant.

Stanley D. Rauls, for appellee.

JOSEPHINE LINKER HART, Judge. The crux of this appeal is the allowance by the probate court of appellees' claims for court-awarded attorney's fees and costs. This case is the sequel to two earlier appeals and both cases, as here, concern attorney's fees awarded appellees as a consequence of appellees being the prevailing party in a breach-of-contract suit brought by the personal representative. For reversal, the personal representative argues that the probate court erred in allowing appellees' untimely-filed claims and ordering the estate to post bond. Further, the personal representative cites as error the probate court's findings that its request for a setoff was barred and the inventory, as filed, was inadequate. We disagree with the personal representative and affirm.

In the first appeal, *Estate of James M. Berry, Deceased v. Styles Optics, Inc., et al.*, CA 98-222, slip op. at 8-10 (Ark. App. Nov. 11, 1998), the personal representative appealed a chancery court's decision in which the chancellor found in favor of appellees in a breach of contract claim brought by the personal representative and awarded appellees attorney's fees of $13,141.11. This court affirmed the chancellor's decision.

In the second appeal, the personal representative attempted to reverse the probate court's decision that she was estopped from denying appellees' claim despite the fact that the claim had been filed months after the statute of nonclaim had run. The order, which was filed on June 1, 1998, gave the personal representative two options: "(1) deposit funds or a surety bond in the amount of $16,000 to ensure that the claim, if allowed, would be paid; or, (2) recover assets previously distributed equal to that amount." The appeal, however, was dismissed because this court concluded that

the provision "if allowed" prevented the order from being a final, appealable order. *Betty B. Eddins, Administratrix v. Style Optics, Inc.*, CA 98-862, slip op. at 4 (Ark. App. Feb. 10, 1999).

After remand, appellees filed a petition seeking to require the personal representative to file an inventory[1] and filed an additional claim for $102, the costs awarded for the second appeal. This claim was in addition to their previous claim for attorney's fees of $13,141.11. The personal representative again denied appellees' claims and moved to have the June 1, 1998, order set aside. After a hearing on April 28, 1999, the court: (1) ordered the personal representative to file on or before May 10, 1999, an inventory of the deceased's assets as of the date of his death; (2) relying on *Brickey v. Lacey*, 247 Ark. 906, 448 S.W.2d 331 (1969), allowed appellees' claims of $13,141.11 and $102, and, consequently, denied the personal representative's requests.

Following the entry of that order on July 30th, there was a series of letters between the probate court and the personal representative's attorney. Ultimately, the probate court entered a second order on August 27, 1999, finding that the inventory filed by the personal representative was "wholly inadequate" and ordered the estate to file another inventory, required the personal representative to secure a bond in the amount of $16,000, and ruled that the doctrine of *res judicata* barred the estate from receiving a setoff. Thereafter, the personal representative appealed both the July 30, 1999, and the August 27, 1999, orders.

On appeal, "[p]robate cases are reviewed *de novo* . . . [and] we will not reverse the probate judge's findings of fact unless they are clearly erroneous. . . . A finding is clearly erroneous when, although there is evidence to support it, we are left on the entire evidence with the firm conviction that a mistake has been committed." *Snowden v. Riggins*, 70 Ark. App. 1, 7-8, 13 S.W.3d 598, 602 (2000) (citations omitted); *see also* Ark. R. Civ. P. 52(a). Furthermore, "[w]hile we will not overturn the probate judge's factual determinations unless they are clearly erroneous, we are free in a *de novo* review to reach a different result required by the law." *Standridge v. Standridge*, 304 Ark. 364, 370, 803 S.W.2d 496, 499 (1991) (citing *Winn v. Chateau Cantrell Apartment Co.*, 304 Ark. 146, 801

---

[1] The distributees had earlier filed waivers of inventory and accounting.

S.W.2d 261 (1990); *Ferguson v. Green*, 266 Ark. 556, 587 S.W.2d 18 (1979)).

## I. Allowance of Appellees' Claims

The personal representative argues that *In Re Estate of Spears*, 314 Ark. 54, 858 S.W.2d 93 (1993), instead of *Brickey* controls the outcome of this case. In our view, however, the probate court properly relied on *Brickey* in allowing appellees' claims. A review of the facts of these cases demonstrates that the personal representative's reliance on *Spears* is misplaced.

The decedent in *Spears* was the principal owner of a real estate company and a construction company. In January 1989, Spears, the decedent, entered into a contract with Jimmie and Gay Bowling whereby he agreed to provide a lot and build a house in Little Rock for the Bowlings, and they agreed to convey to Spears a house that was mortgaged in which Spears would assume the note payments. Thereafter, Spears made timely payments on the assumed note until May 1990, when he conveyed the mortgaged property to his brother, who stopped making payments the following February.

Consequently, demand was made upon the Bowlings for delinquent note payments in May 1991, when they learned that Spears had died in September 1990. The mortgaged property went into foreclosure and a deficiency judgment of $24,314.90 was entered against the Bowlings, who in turn filed a claim against the estate in an attempt to satisfy the judgment. The probate court found that the Bowlings' claim was filed more than three months after the first publication of the statutory notice and, therefore, violated the statute of nonclaim. Further, the probate court found that the Bowlings were not reasonably ascertainable creditors and, thus, not entitled to file their claims within the two-year limitations period found in Ark. Code Ann. § 28-50-101(h) (Supp. 1991). The probate court's decisions were affirmed on appeal.

In *Brickey*, on the other hand, the estate sought and received permission from the probate court to bring an unlawful detainer action against Lacy. Lacy surrendered possession of the premises, but filed an answer denying the personal representative's right to possession and prayed for damages caused by his eviction. The trial resulted in a judgment in favor of Lacy for $8,028.26, and that

judgment was affirmed on appeal. Lacy, accordingly, filed a claim against the personal representative to collect. The probate court allowed the claim and the personal representative appealed arguing that the claim was barred by the statute of nonclaim. Our supreme court, however, affirmed and held that Lacy's demand was a "cost of administration" and not barred by the statute of nonclaim. *Brickey*, 247 Ark. at 908-909, 448 S.W.2d at 332.

██ ██ Plainly, *Spears* and *Brickey* deal with entirely different types of claims. Claims arising from a creditor's dealings with the decedent prior to death is the subject of the court's decision in *Spears*. However, in *Spears* the court did not discuss *administrative claims*, which is the subject of the court's decision in *Brickey*. While all claims are certainly subject to strict application of applicable statutes, it is fair to state that, generally speaking, an administrative claim is distinct:

> The duties of finding the assets of the estate, of discharging its obligations, of preventing waste, and, if there is a will, of carrying out the expressed wishes of the testator, necessarily require financial outlays by the executor. Debts arising in the performance of these duties are classified as "expenses of administration."

3 James M. Henderson, *Probate Practice* § 960, at 1634 (1928). In this case, the personal representative, in accordance with her duties as personal representative, sued appellees to find and secure estate assets. Appellees, however, prevailed and were awarded attorney's fees, which created a debt that arose in the performance of the personal representative's duties.

██ The personal representative's counter-argument is that if appellees' claims are administrative expenses, then the claims are not among the allowable claims listed in Ark. Code Ann. § 28-48-108 (1987). We interpret that statute, however, as mainly providing formulas to compensate personal representatives and attorneys, and not limiting the type of allowable administrative claims.

We also reject the personal representative's argument that *Brickey* was overruled by *Johnson & Hudson v. Poore*, 266 Ark. 601, 587 S.W.2d 44 (1979). The issue in *Johnson & Hudson* was whether a tort action could be brought *against* an estate after the expiration of the statute of nonclaim, and the supreme court reversed the trial court and remanded for trial.

■ Equally unconvincing is appellant's argument that the probate court erred in finding that both appellees filed claims. Citing *Cleveland Chem. Co. of Arkansas, Inc. v. M. G. Keller,* 19 Ark. App. 7, 716 S.W.2d 204 (1986), the personal representative argues that appellees' claims are invalid because Sidney Dobbins is the only person who signed the claims. A resolution of the case at bar is given little guidance by the case cited by appellant. *Cleveland Chem.* holds that a person is personally liable on an instrument if the instrument does not demonstrate he signed in a representative capacity. Here, the claim bore the typed name of both Style Optics, Inc. and Sidney Dobbins, but only had the signature of Sidney Dobbins. We conclude that the probate court did not err by allowing these claims because the judgment for attorney's fees was jointly awarded to "the defendants," which included both appellees in this case,[2] and, as such, each joint party may independently attempt to collect the judgment by filing a claim. *Cf.* 33 C.J.S. *Executions* § 20 (1998) ("Either of several joint judgment creditors may take out execution without consulting the others, unless there is some agreement to the contrary.").[3]

■ We, therefore, conclude that *Brickey* controls, and now apply its holding to the case at bar. The statute of nonclaim provides:

> Except as provided in §§ 28-50-102 and 28-50-110, all claims against a decedent's estate, *other than expenses of administration* and claims of the United States which, under valid laws of the United States, are not barrable by a statute of nonclaim, but including claims of a state or territory of the United States and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, shall be forever barred as against the estate, the personal representative, or the heirs and devisees of the decedent, unless verified to the personal representative or filed with the court within three (3) months after the date of the first publication of notice to creditors. However, claims for injury or death caused by the negligence of the decedent shall be filed within six (6) months

---

[2] The defendants who were awarded the attorney's fees award were Style Optics, Inc.; Sidney Dobbins; and Betty Dobbins, Secretary.

[3] The issue of the ownership of the funds, including the corporation's ownership, is not before us in this appeal.

from the date of first publication of the notice, or they shall be forever barred and precluded from any benefit in the estate.

Ark. Code Ann. § 28-50-101(a) (Supp. 1999) (emphasis added). If appellees' claims had been something other than an expense of administration, then the personal representative's argument might prevail under a strict application of the statute. However, *Brickey* considered a claim to collect a judgment awarded a defendant who was sued by a personal representative to be an administrative claim, and, therefore, not subject to the statute of nonclaim.[4] Because appellees' claims in our view are of the type considered to be administrative claims under *Brickey*, we affirm the probate court's allowance of appellees' claims and denial of the personal representative's motions opposing the claims.

## II. Bond

■ The personal representative argues, without challenging the constitutionality of the probate code, that the order requiring the personal representative to secure a bond constitutes a violation of due process inasmuch as it orders the estate to do something it cannot because a significant portion of the property that once belonged to the estate has been partially distributed.[5] We disagree with appellant and affirm.

The key provision of the probate codes states:

[I]f any person asserting a claim against the estate or having or claiming any interest in the estate files a written demand, the personal representative shall give bond as required in § 28-48-201 or in such other amount as the court shall direct after considering the amount of the alleged claim or asserted interest; but, if it is shown to the court that the alleged claim is invalid or has been paid or that the person alleging the interest in the estate has, in fact, no interest therein, then bond shall not be required.

---

[4] We do not consider, as the personal representative argues, the filing of a claim such as appellees' in a pending probate action to constitute an attempted execution on the estate's property in violation of Ark. Code Ann. § 28-50-114 (1987).

[5] We do not address appellant's argument that the probate court violated the probate code by ordering the *estate* instead of the *Personal representative* to secure the bond because she conceded during oral argument that the proper interpretation of the order was that the personal representative was to secure the bond.

Ark. Code Ann. § 28-48-206(c)(2) (Supp. 1999). Appellees complied with this statute by filing their written demand (*i.e.*, their administrative claim) and petitioning the probate court for an order directing the estate's assets be returned or, alternatively, requiring the personal representative to secure a bond. The petition was served upon the personal representative, and the probate court held a hearing on the petition and granted the relief sought in the petition. Ultimately, the probate court in the August 27, 1999, order removed as an option the returning of property to the estate and simply ordered the personal representative to secure a bond.[6] The personal representative was given both notice of the petition and an opportunity to be heard regarding the relief sought in the petition. The order for the personal representative to secure a bond, in our view, complies with the probate code, and furthermore, does not constitute a deprivation of due process.

### III.  Setoff

The personal representative next argues that the probate court erred by finding that the estate was unable to receive a setoff for appellees' administrative claims. This argument is based on the personal representative's assertion that both Sidney Dobbins and Style Optics, Inc., were awarded the attorney's fees and the fact that the estate and Dobbins each control equal shares of the corporation. As such, the personal representative argues that the estate is entitled to a setoff equal to fifty percent of the judgments to account for and reflect the estate's fifty percent ownership in the corporation. We find no merit to this argument.

A setoff is proper when "a *distributee* of an estate is indebted to the estate . . . ." Ark. Code Ann. § 28-53-111 (1987) (emphasis added). A distributee, however, "denotes a person entitled to real or personal property of a decedent, either by will, as an heir, or as a surviving spouse . . . ." Ark. Code Ann. § 28-1-102(a)(7) (1987). Because there is no allegation that a distributee is indebted to the estate, the probate court did not err by denying the estate's request for a setoff, and we affirm.

---

[6] Thus, we do not agree with appellant's argument that the probate court has rendered a "conditional order." The latest order from the probate court did not provide the personal representative with an option — she was ordered to secure a bond.

## IV. Inventory

For her final argument, the personal representative contends that the trial court erred in finding that her inventory was "totally inadequate." Appellees, in support of the probate court's order, argue that "[t]he inventory filed by the personal representative . . . was not in the form required by the Arkansas Supreme Court; it did not even list the property disclosed by the probate file . . .; and it claimed (without legal basis) the debt owed to the estate by the personal representative was forgiven." The inventory itself lists as the decedent's assets, at the time of death, multiple parcels of real property in Arkansas and Florida with values, if known; several items of personal property including a boat, motor, car, and truck with values, if known; assets in Style Optics, Inc., with values; and half of the corporate funds expended in the defense of the chancery suit. The inventory also states the decedent's liabilities at the time of death, which include funeral expenses, credit and charge-card balances, homeowners insurance, etc.

The relevant provisions of the probate court provide:

(a)(1) Within two (2) months after his qualification or as the court may direct, a personal representative shall, except as provided in this section, make and file a true and complete inventory of all property owned by the decedent at the time of his death, except such interests as terminated by reason of his death, describing each item of property in detail and setting out the personal representative's appraisement of the fair market value of the property as of the date of the death of the decedent.

(2) *The personal representative shall append to the inventory his affidavit to the effect that the inventory is complete and accurate to the best of his knowledge and belief and that the personal representative was not indebted or obligated to the deceased at the time of his death* except as stated in the inventory.

Ark. Code Ann. § 28-49-110(a) (1987) (emphasis added).

■ Because the probate court failed to express the reason why the inventory was "wholly inadequate," we are left in the dark as to why the court reached that conclusion. Nevertheless, we conclude in our *de novo* review that the conclusion was correct because of the personal representative's failure to attach an affidavit as required by Ark. Code Ann. § 28-49-110(a). If the statute is unambiguous,

then strict compliance is required. *See, e.g., Norton v. Norton*, 337 Ark. 487, 989 S.W.2d 535 (1999). In this case, the requirement in the statute is clear and unambiguous, and the personal representative failed to strictly comply with that statute. Therefore, the probate court's finding that the inventory was "wholly inadequate" is affirmed.

Affirmed.

JENNINGS and GRIFFEN, JJ., agree.