Barbara MATHENY *v.* HEIRS OF Roy OLDFIELD

CA 00-87                                        32 S.W.3d 491

Court of Appeals of Arkansas
Division III
Opinion delivered December 6, 2000

*William R. Mayo*, for appellant.

*Mark R. Johnson* and *Larry D. Kissee*, for appellees.

WENDELL L. GRIFFEN, Judge. This case involves an appeal from a will contest. Barbara Matheny appeals from the order of the Sharp County Probate Court admitting an unsigned, undated copy of a will as the valid last will of Roy Oldfield (November will). Appellees purport to be Oldfield's heirs-at-law. Appellant argues that the probate court erred in holding that the November will had been properly executed and revoked another will (October will) that had been admitted to probate. We affirm the probate court's order with respect to its finding that the November will was properly executed and revoked the October will. However, because appellees failed to present any proof that the

original November will was lost or fraudulently destroyed, as required by the Arkansas statute governing the probate of lost wills, the probate court improperly admitted the November will into probate. Therefore, we conclude that Oldfield died intestate, and reverse for a determination of Oldfield's heirs-at-law.

Prior to the latter part of 1997, decedent Roy Oldfield had attorney Mark Johnson draft a will for him. During the latter part of 1997, Oldfield had two other wills drafted by attorneys. A will executed on October 2, 1997, in the law office of Sharron Glaze in Batesville left most of Oldfield's assets to appellant (October will). Another will executed in the law office of Michelle Huff in Hardy left decedent's assets to his nieces and nephews (November will).

Appellant was a long-time acquaintance of Oldfield, who was a friend of appellant's sister-in-law. At Oldfield's request, appellant removed him from a nursing home to live with her and her husband the year before he died. After Oldfield's death on February 9, 1998, appellant filed a petition to probate the October will and be appointed executrix of his estate. Appellees, Oldfield's nieces and nephews, filed a petition to contest the October will, alleging that Oldfield was incompetent to execute a will due to mental incapacity, fraud, undue influence, coercion, and procurement by appellant. Appellees subsequently submitted a will dated July 29, 1990, alleging that will to be the last valid will of Oldfield.

Appellees then filed an amended petition to contest the October 1997 will, alleging they had discovered a copy of another will, purportedly executed in November 1997, which they asserted was Oldfield's last will. During the probate hearing, appellant argued that appellees had not presented sufficient evidence to prove the November will was lost, as required under Arkansas Code Annotated section 28-40-302 (1987). The probate judge found by clear and convincing evidence that the November 1997 will was the last valid will of Oldfield; that the October 1997 will was revoked by the November will; that appellant should be removed as executrix; that the November will was not properly revoked by decedent at the time of his death; and that appellee Richard Oldfield should serve as executor. Appellant appeals from this order. We reject appellant's argument concerning proof of execution of the November will, but agree that the probate court erred in admitting the

November will into probate because appellees failed to meet the proof of a lost will as required under section 28-40-302.

*Execution of the November Will*

The instrument proffered by appellees was a copy of a will that was unsigned and undated. Three people testified with regard to the circumstances surrounding the execution of the November will: Michelle Huff, who prepared the will, and Tina Hall and Brandi Holloway, who worked for Huff and witnessed the execution of this will. These witnesses testified that as a matter of practice they did not keep a copy of a signed will in their files, and that they put a closing date on the outside of a client's file, referred to as a "will jacket," within a few days to one week of the completion of services requested. Huff and Hall testified that Huff's office prepared only one will for Oldfield. Oldfield's will jacket showed two closure dates: July 28, 1997, and November 17, 1997.

Huff testified that Oldfield requested legal services from her involving revocation of a power of attorney and drafting a will. She testified that she began gathering information from him to draft the will, but he was unable to remember all of the names of his nieces and nephews that he wanted to include in it. She stated that he dropped by the office periodically to provide this information, and wanted the will drafted to leave most of the assets to the executor to distribute. Her office explained to him that they would not draft the will in that manner. Oldfield signed the revocation of power of attorney on June 11, 1997. Oldfield's file was first closed on July 28, 1997, but Huff testified that the will was not executed at that time, and that her office closed his file because they believed he was not going to execute the will she had prepared for him.

Huff sent Oldfield a letter dated July 28, 1997, which instructed him to destroy the will drafted by Johnson and also contained a billing statement. Huff testified that under normal circumstances, instructing a client to destroy his own will, sending him a letter that included a bill, and closing the file would indicate that he had executed a will. However, Huff indicated that Oldfield's case was not "normal" because her office thought he was not going to sign the copy of the will she had drafted.

Huff identified the will submitted by appellees as an unsigned, unexecuted copy of the will she prepared for Oldfield. Oldfield's file had a second closing date of November 17, 1997. Based on the dates on the will jacket and her memory that it was roughly three months from the time he executed the will until he died, she testified that Oldfield executed the will in November 1997.

Tina Hall testified that she remembered witnessing the November will and that Brandi Holloway and Huff were also present. She identified the November will as a copy of the will executed by Oldfield. She stated the will was signed around the time the file was closed on November 17, 1997, and she did not recall seeing Oldfield after he signed his will. She stated that when he left he took his original signed will with him. Hall based her recollection of the November date on the will jacket.

Oldfield sent Huff a letter dated August 20, 1997, requesting that she send him the old will, the revocation of power of attorney and the "new will" she prepared for him.[1] He stated in his letter that if he understood and agreed with the will, he would bring it with him and come to her office to sign it. In response, Huff's office sent Oldfield a letter dated September 8, 1997, enclosing his old will (drafted by Johnson), his old durable power of attorney, the original revocation of the general durable power of attorney, and a copy of the November will. Hall testified that after the September 8 letter was sent to Oldfield, the only remaining document in his file was the unexecuted original of the November will. She stated it was not possible that Oldfield signed his will on July 27, 1997, when the file was closed the first time, because when the file was closed the first time, he had not signed the will, and it did not appear he was going to sign the will. She testified that she only prepared one will for him that left his assets to his nieces and nephews.

Brandi Holloway testified that she, Huff, and Hall witnessed the execution of the November will. She assumed he signed his will on November 17, 1997, because that was the day the file was last closed, and remembered he signed his will the last time he came to Huff's office. Holloway stated that when Oldfield came to execute his will, she retrieved his file from the closed files and there was no signed will in his file. She testified that Oldfield signed his will at

---

[1] Apparently, the old will was not sent with the billing statement on July 28.

least "a couple of months" after he came in to sign the revocation, because he had questions about having the executor distribute his assets. She initialed the closing date on the will cover, and testified that November 17, 1997, was the date the file was closed for the last time. Holloway indicated it was not customary for them to leave files open for a long time, especially those containing wills. Thus, the November 17, 1997 closing date indicated to her that the will was executed on that day or the previous day.

██ The proponent of a lost will has the burden of proving the execution of a will and its contents by strong, cogent, and convincing evidence. *See Conkle v. Walker,* 294 Ark. 222, 742 S.W.2d 892 (1988); *Hanna v. Magee,* 189 Ark. 330, 72 S.W.2d 237 (1934). Probate cases are tried *de novo* on appeal, and we do not reverse the findings of the probate judge unless those findings are clearly erroneous. We give due deference to the probate judge's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *See Gilbert v. Gilbert,* 47 Ark. App. 37, 883 S.W.2d 859 (1994).

We hold that the probate judge did not err in finding that appellees established the November will was executed after the October will. Appellant maintains that the above testimony is insufficient to establish that the November will was executed after the October will because the witnesses had no independent recollection of the date the will was executed. Appellant attempts to cast doubt on the relevant dates by pointing to the continuing correspondence between Huff and Oldfield after the file was originally closed, and by Oldfield's reference to his "new" will.

However, we note the initial correspondence after the file was closed and Huff's closing letter was sent was initiated by Oldfield, when he requested a copy of his new will. That request, dated August 20, clearly indicates his will had not been signed at that point. Oldfield stated in his letter that if he agreed with the new will, he would bring it to Huff's office and sign it. Huff testified it was not normal procedure to send a client a copy of an unsigned will. The reference to a "new" will was obviously a reference to the will drafted by Huff and not, as appellant attempts to portray, a second will drafted by Huff. Huff and Hall testified that Huff's office drafted only one will for Oldfield. Huff, Hall, and Holloway also testified that it was not office practice to retain a signed will,

because the client takes the executed will with him. Hall and Holloway also testified that the unsigned will was the only document remaining in Oldfield's file, even after the letters and other documents were sent to him in September 1997.

Further, Huff, Hall, and Holloway acknowledged the possibility that the will may have been executed on a date other than the November date on the will jacket, but each reiterated her belief that the will Huff drafted was executed on or near November 17, 1997, based on the closing date on the will jacket. Rather than establishing that the will was executed in July when the file was originally closed, the fact that Oldfield's file was originally closed on the same day a bill was sent to him for services rendered corroborates the witnesses' testimony that they routinely closed their files shortly after representation ended. Huff also remembered that it was roughly three months from the time Oldfield executed the will until he died. He died in February 1998, which is roughly three months after the second closing date on the will jacket.

Finally, appellant testified that Oldfield told her he had destroyed the "papers" he received from Huff. She testified that the day he came in and allegedly told her that he tore up the papers from Huff was *after* the October will had been executed. While the trial court apparently did not believe appellant's testimony that Oldfield destroyed his November will, appellant's testimony otherwise supports that Oldfield went to Huff's office after he obtained the October will.

■ Based on the above evidence, we hold that the probate judge's finding that the November will was executed after the October will was not clearly erroneous. Arkansas Code Annotated section 28-25-109(a)(1)(1987) provides that a will is revoked by a subsequent will which revokes the prior will expressly or by inconsistency. The November will contains a clause that expressly revokes all prior wills. The legal effect in this case is that the November will revoked the October will.[2]

---

[2] We note that appellant seems to assume that if the November will was destroyed, the October will, under which she took, would be revived. However, under Arkansas law, a will that has been revoked can only be revived by re-execution or the execution of another will in which the revoked will is incorporated by reverence. *See* Ark. Code Ann. § 28-25-110. *See also Parker v. Moberly*, 264 Ark. 805, 577 S.W.2d 583 (holding decedent died intestate where a 1976 will revoked a 1973 will, but the 1976 will was subsequently destroyed).

*Proof of Lost Will*

■ However, we also hold that the probate court erred in admitting the November will into probate because the record is devoid of any evidence that the will survived Oldfield's death. In admitting a copy of the November will into probate, the probate judge implicitly found that the original November will was lost. In an apparent reference to appellant's testimony that Oldfield told her he had destroyed the November will, the probate court found that the November will "was not properly revoked" by Oldfield at the time of his death. We reverse and remand on this point, because our review of the record reveals no proof that the will was in existence at the time of Oldfield's death or that the will was fraudulently destroyed during his lifetime.

Arkansas Code Annotated section 28-40-302 governs the probate of lost wills, and provides:

> No will of any testator shall be allowed to be proved as a lost or destroyed will, unless the provisions are clearly and distinctly proved by at least two (2) witnesses, a correct copy or draft being deemed equivalent to one (1) witness; and
> (1) The will is proved to have been in existence at the time of the death of the testator; or
> (2) The will is shown to have been fraudulently destroyed in the lifetime of the testator.

The probate court found that the November will was executed after the October will, and therefore, revoked the October will. However, simply because the November will revoked the October will does not mean that the November will was not revoked by a subsequent will or act of the decedent. Under section 28-40-302, the proponent of a lost will must establish the terms of the will *and* that the will was in existence *or* that the will was fraudulently destroyed in the lifetime of the testator.

■ Upon *de novo* review of the record before us, we cannot affirm the probate court's implicit finding that the November will survived Oldfield's death and was lost. While we defer to the probate judge's assessment of appellant's credibility, we do not agree that Oldfield's failure to revoke or destroy his will as testified by appellant constitutes evidence that the will was in existence at the time of his death. Further, although hinted at by appellees, there is

no proof in the record that the will was fraudulently destroyed before Oldfield died. Absent proof that the November will survived Oldfield's death and was then lost or fraudulently destroyed, and in the face of proof that the November will was properly executed and therefore revoked the October will, we are forced to conclude that there was no will to probate and that Oldfield died intestate. Because the record does not establish the identity of Oldfield's heirs-at-law, we must remand to the probate court for findings in this regard.

Affirmed in part; reversed and remanded in part.

KOONCE and STROUD, JJ., agree.